**CANADIAN IMPERIAL BANK OF COMMERCE, Appellant,**

**v.**

**WELLS FARGO BANK, NATIONAL ASSOCIATION, Appellee.**

**Appeal No. 86–1351.**

United States Court of Appeals, Federal Circuit.

Feb. 17, 1987.

James F. Browne, Laurence Brown and Associates, P.C., Arlington, Va., argued, for appellant. With him on brief, was Laurence R. Brown.

Thomas J. Moore, Bacon and Thomas, Alexandria, Va., argued, for appellee. Richard E. Backus, Flehr, Hohbach, Test, Albritton & Herbert, San Francisco, Cal., was on brief, for appellee.

Before FRIEDMAN, Circuit Judge, BENNETT, Senior Circuit Judge, and EDWARD S. SMITH, Circuit Judge.

FRIEDMAN, Circuit Judge.

This is an appeal from the decision of the Trademark Trial and Appeal Board (Board), sustaining an opposition to registration of the trademark COMMCASH for "banking services" on the basis of the prior use and registration of the trademark COMMUNI-CASH for "banking services." 228 USPQ 689 (TTAB 1986). We affirm.

## I

The pertinent facts are as follows:

In May 1981, the appellant Canadian Imperial Bank of Commerce (Canadian Bank) filed an application to register COMM-CASH as a service mark for "banking services." Crocker National Bank (Crocker), now Wells Fargo Bank, N.A., opposed the application on the basis of Crocker's prior use and registration of the mark COMMUNICASH for "banking services."

As the Board stated, the only contested issue in this proceeding was "whether use of the respective marks on the respective services would be likely to cause confusion as to source or origin under Section 2(d) [of the Lanham Act, 15 U.S.C. § 1052(d)]." 228 USPQ at 689.

Although Canadian Bank's application and Crocker's registration cover the use of their respective marks for "banking services," both marks are currently used only in connection with the highly specialized service of electronic cash management. This service apparently is used solely by large corporations and banks. The Board found that Canadian Bank's proffered testimony supported Canadian Bank's contention that

the degree of care taken in purchasing these services is extremely high and the purchaser of the services is much more discerning and sophisticated than a member of the public seeking banking services for his or her personal needs.

228 USPQ at 690. Nonetheless, the Board concluded that

[i]t is well settled that in a proceeding such as this, the question of likelihood of confusion must be determined based on an analysis of the mark as applied to the goods and/or services recited in applicant's application vis-a-vis the goods and/or services recited in an opposer's registration, rather than what the evidence shows the goods and/or services to be. See: *CBS, Inc. v. Morrow,* 708 F.2d 1579, 218 USPQ 198 (Fed.Cir.1983); 1 McCarthy, *Trademarks and Unfair Competition* § 20: 4A, 1024 (2d. ed. 1984) and cases cited therein [sic].

In the present case, the relevant analysis of likelihood of source confusion may not be limited to electronic banking services to corporate and institutional customers since the recitation of services in

applicant's application and in opposer's registration is not so limited. On the contrary, applicant seeks registration of the "COMMCASH" mark for banking services with no restrictions whatsoever. Similarly, the services covered by opposer's pleaded registration for "COMMUNICASH" include banking services, per se. Therefore, applicant's banking services as well as those of opposer are assumed to be all services that would ordinarily be considered to fall under the heading of banking services....

Turning to the respective marks, it is our view that while they are not identical, they are strikingly similar in appearance, sound and in the commercial impression engendered....

....

Since we find that "COMMCASH" and "COMMUNICASH" are similar in appearance, sound and meaning and since the marks are used in connection with identical banking services which are presumed to be banking services rendered to all ordinary bank customers, we conclude that source confusion is likely.

228 USPQ at 690–91.

## II

■ Canadian Bank's principal contention is that the Board erred in basing its determination of likelihood of confusion upon the use of the mark specified in the application for registration and the existing registration of Crocker for the broad category of "banking services" instead of the narrower use that Canadian Bank and Crocker made of the marks for the specialized services of electronic cash management.

Canadian Bank asserts that decisions of this court and its predecessor require the Board to base its decision upon the narrower actual use of the marks in the marketplace, and that because the customers of the specialized service are sophisticated and discerning, there is no likelihood of confusion.

Our decisions, however, do not justify the conclusion that Canadian Bank draws from them. Instead, they support the decision of the Board.

A. In *CBS, Inc. v. Morrow*, 708 F.2d 1579, 218 USPQ 198 (Fed.Cir.1983) (which, as noted, the Board cited, but which Canadian Bank did not even refer to in its opening brief), this court reversed a decision of the Trademark Trial and Appeal Board dismissing an opposition to registration of the mark THINKER TOYS based upon the likelihood of confusion with the registered mark TINKERTOY. The application for registration of THINKER TOYS described the goods involved as "includ[ing] 'electronic components and circuit boards,' but ... not includ[ing] 'electronic terminals, keyboards, screens, printers, computers or programs or software for games or toys.'" 708 F.2d at 1580, 218 USPQ at 199. The opposer's mark TINKERTOY was registered "for 'games, toys, and children's building-blocks.'" *Id.*

In holding that registration of the applicant's mark "should ... be refused" because "as applied to applicant's goods, [the mark] so resembles opposer's registered mark that it is likely to cause confusion," 708 F.2d at 1582, 218 USPQ at 200, the court stated:

Where likelihood of confusion is asserted by an opposer with respect to a trademark for which an application for registration has been filed, the issue must be resolved on the basis of not only a comparison of the involved marks, but also on consideration of the goods named in the application and in opposer's registration and, in the absence of specific limitations in the application and registration, on consideration of the normal and usual channels of trade and methods of distribution. The description of the goods in the application for registration is critical because any registration that issues will carry that description. Moreover, although a registrant's current business practices may be quite narrow, they may change at any time from, for example, industrial sales to individual consumer sales.

*Id.* at 1581, 218 USPQ at 199 (citations omitted); *see also* 1 J. McCarthy, *Trademarks and Unfair Competition*, § 20:4A at 1024 (2d ed. 1984) ("In determining likelihood of confusion in an opposition, it is the mark as shown in the application and as used on the goods described in the application which must be considered, not the mark as actually used by applicant").

The court also rejected the applicant's argument that

confusion from use of the marks is not likely because its customers are by and large sophisticated, well-educated, technically oriented persons, in contrast to the generally juvenile buyers of the wooden stick toys that opposer manufactures. However, there is no restriction on the nature of the "games" identified in opposer's registration.

708 F.2d at 1581, 218 USPQ at 199–200.

*CBS* fully supports the Board's ruling that "in a proceeding such as this, the question of likelihood of confusion must be determined based on an analysis of the mark as applied to the goods and/or services recited in applicant's application vis-a-vis the goods and/or services recited in an opposer's registration, rather than what the evidence shows the goods and/or services to be." In *CBS*, the court held that the issue of likelihood of confusion must be resolved not only by comparison of the marks themselves, "but also on consideration of the goods named in the application and in opposer's registration and, in the absence of specific limitations in the application and registration, on consideration of the normal and usual channels of trade and methods of distribution."

In the present case, there is nothing in either Crocker's registration or Canadian Bank's application that limits the use of the mark to any services narrower than "banking services" generally.

In basing its likelihood-of-confusion determination on that broad service, the Board also properly heeded this court's recognition in *CBS* that the definition of goods in the application was "critical" because "any registration that issues will carry that description" and because "although a registrant's current business practices [in connection with which the mark is used] may be quite narrow, they may change at any time." The Board pointed out that the application and the registration were not limited to "electronic banking services to corporate and institutional customers" but covered "banking services with no restrictions whatever." It was Canadian Bank that sought to register its mark for the broad range of services, and it is on that basis that the Board correctly determined the likelihood-of-confusion issue.

B.  Canadian Bank relies upon *In re E.I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973), and *Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 218 USPQ 390 (Fed.Cir. 1983), to support its position.  Neither of those cases, however, dealt with the issue before us of whether the Board properly limited its inquiry into the likelihood of confusion in the use of the marks for the "banking services" specified in Canadian Bank's application and Crocker's registration.

*Du Pont* involved the Board's refusal to register du Pont's mark RALLY "for a combination polishing, glazing and cleaning agent for use on automobiles" because of the likelihood of confusion with Horizon's registered identical mark "for an all-purpose detergent."  476 F.2d at 1359, 177 USPQ at 566.  In reversing that ruling, the court announced "a reliable guide for decision-making in cases involving Sec. 2(d) [of the Lanham Act]," which included a consideration of 13 specified "evidentiary elements" that "when of record must be considered."  476 F.2d at 1360–61, 177 USPQ at 566–67.  The court further stated: "In every case turning on likelihood of confusion, it is the duty of the examiner, the board and this court to find, upon consideration of *all* the evidence, whether or not confusion appears likely."  476 F.2d at 1362, 177 USPQ at 568.

The court's actual holding, however, was that in view of an agreement between du Pont and Horizon, under which du Pont

agreed to limit its use of the mark to the automobile markets and Horizon agreed to limit its use to the general purpose cleaning market, confusion was unlikely. The court reasoned that the agreement reflected the belief of businessmen thoroughly familiar with the markets for their products that confusion would not result from the respective uses of the mark for the different purposes. The court concluded:

> We have no hesitancy in holding, therefore, under the facts of this case, that confusion is not likely to stem from concurrent use of RALLY by Horizon and DuPont on their respective goods under the terms of their agreement.

476 F.2d at 1363, 177 USPQ at 569.

*Giant Food* involved an attempt to register GIANT HAMBURGERS "for 'hamburger and hot dog sandwiches, milk shakes for consumption on or off premises' and restaurant services." The application was opposed by the owner of the registered marks GIANT FOOD and GIANT "for, inter alia, retail grocery and supermarket services and private label food products." 710 F.2d at 1567, 218 USPQ at 392. In reversing the Board's determination of no likelihood of confusion, the court stated:

> In considering the question of likelihood of confusion, the only relevant application of the law to the facts is in the context of the marketplace, because that is where confusion of prospective purchasers would or would not occur.... All evidence of record bearing on the question of likelihood of confusion must be considered in order to determine the circumstances surrounding the use of the mark. *Du Pont* sets forth a list of 13 evidentiary factors that must be considered, when of record, in testing for likelihood of confusion.

710 F.2d at 1569, 218 USPQ at 393–94 (citations omitted).

Neither of these cases discussed or considered the question whether the determination of likelihood of confusion should be made with respect to the use of the mark specified in the registration and application. Neither involved a registration and application that were for the identical use, as in the present case. Each case involved the use of the same (*du Pont*) or similar (*Giant Food*) marks for different products, and the question was whether that use was likely to cause confusion as to the source of the product. In answering that question, the court necessarily had to consider the impact of the marks upon the customers in the different markets in which the marks were used. Indeed, in each case the court apparently based its analysis upon confusion in the markets specified in the registration and application, where the marks were used.

In the present case, however, Canadian Bank sought registration of its mark for the identical service that Crocker's registered mark covered. The Board thus properly considered whether, in the entire market for that service (banking services), there was likelihood of confusion between the marks. That is precisely the approach that CBS requires, and nothing in *du Pont* or *Giant Food* is inconsistent with it.

Canadian Bank relies on the statement in *Giant Food* that likelihood of confusion must be determined "in the context of the marketplace, because that is where confusion of prospective purchasers would or would not occur," and that "[a]ll evidence of record bearing on the likelihood of confusion must be considered to determine the circumstances surrounding the use of the mark." The statements in an opinion, however, must be read in light of the issue before the court, and broad language cannot be applied uncritically to wholly different factual situations. *Armour & Co. v. Wantock*, 323 U.S. 126, 133, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944). Here the relevant "marketplace" is "banking services," and those were the services for which Canadian Bank sought to register its mark. In determining likelihood of confusion, the Board properly limited its inquiry to the likelihood of confusion in that broad category of services.

### III

Canadian Bank also challenges the Board's finding that in the market for

banking services there was likelihood of confusion between the two marks. The Board pointed out that although the marks were "not identical, they are strikingly similar in appearance, sound and in the commercial impression engendered." It concluded that "since the marks are used in connection with identical banking services which are presumed to be banking services rendered to all ordinary bank customers ... source confusion is likely." We have no basis for reversing that determination.

## CONCLUSION

The decision of the Trademark Trial and Appeal Board is affirmed.

AFFIRMED.