F293

S. Despertt
Paper No. 19

FOR PUBLICATION IN FULL

U. S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

Trademark Trial and Appeal Board

In re Essex Service Co.

Serial Nos. 568,890 and 573,355

Neil F. Markva for applicant.

Christopher Sidoti, Trademark Examining Attorney, Law Office 5
(Paul E. Fahrenkopf, Managing Attorney).

Before Sams, Rice and Krugman, Members.

Opinion by Krugman, Member:

Applications have been filed to register "ESSEX"[1] and
"ESSEX" and design[2] in the form depicted below



---

[1] Application Serial No. 573,355 filed December 13, 1985.

[2] Application Serial No. 568,890 filed November 18, 1985.

as service marks for communication services, namely, the cable transmission of television.

In each instance, registration has been refused under Section 2(d) of the Trademark Act on the ground that applicant's mark so resembles the previously registered mark "ESSEX" for pre-recorded video cassettes and pre-recorded video disks; and for motion picture production and distribution services, and cable television programming production and distribution services[3] as to be likely, when applied to applicant's services, to cause confusion, mistake or to deceive.

When the foregoing refusals were made final, applicant appealed.

In view of the similarity of the issues to be decided, the Board will determine the question of the registrability of applicant's marks in a single opinion.

Turning to the services, applicant provides cable television broadcasting services to subscribers. Applicant's customers would be those members of the general public in areas

---

[3] Registration No. 1,223,256 issued January 11, 1983.

2

wired for cable television who wish to view cable television in their homes or businesses. The record shows that applicant provides programming to its subscribers, and as well, provides hook-up, installation and maintenance services related to the equipment involved.

Registrant's services include, inter alia, cable television programming production and distribution services. Applicant argues that the respective services are offered through different trade channels to different customers in that registrant's services are offered to cable television distributors and program suppliers while applicant's services are offered to the general public. Applicant further argues that registrant promotes its services to the general public through trade publications while applicant promotes its services through newspaper advertising, direct mail, local television advertising and magazine advertising.

It is clear from the record that the respective services offered under the respective marks are neither identical nor competitive. However, it is well settled that in determining the question of likelihood of confusion in a proceeding such as this, services need not be identical or even competitive in order to find confusion to be likely. All that is necessary is that the services be related in some manner or that the marketing conditions are such that they would be encountered by the same purchasers under circumstances that would give rise, because of

3

the marks, to the mistaken belief that the services originate with or are somehow associated with the same source. See: Chemical New York Corp. v. Conmar Form Systems, Inc., 1 USPQ 2d 1139 (TTAB 1986), citing Mobay Chemical Co. v. Standard Oil Co., 163 USPQ 230 (TTAB 1969); Krafts Inc. v. Country Club Food Industries, Inc., 230 USPQ 549 (TTAB 1986) and State Historical Society of Wisconsin v. Ringling Bros.-Barnum Bailey Combined Shows, Inc., 190 USPQ 25 (TTAB 1976).

In the present case, registrant's services, as identified in the registration, encompass cable television programs which are distributed to cable television transmission companies such as applicant for viewing by applicant's subscribers. Applicant argues, in this regard, that registrant's programs would not appear on applicant's cable television stations because said stations are family oriented while registrant produces and distributes adult x-rated films. However, it is settled that in a proceeding such as this, the determination of likelihood of confusion must be based on an analysis of the marks as used in connection with the goods or services identified in the application vis-a-vis the goods or services identified in the registration, and not by what evidence or argument shows those goods or services to be. See: Canadian Imperial Bank v. Wells Fargo, 811 F.2d 1490, 1 USPQ 2d 1813 (Fed. Cir. 1987). Neither applicant's nor registrant's services, as identified in the

4

application and registration, are restricted to particular types of programming and, in the absence of such restrictions, applicant's arguments concerning the present business practices of itself and the registrant are not relevant.

In our view, subscribers to applicant's cable television services would view a variety of programs on their cable television stations including, presumably, programs produced and distributed by registrant wherein registrant's mark would appear in the opening and closing credits. Moreover, the record shows that applicant's marks appear in a television guide distributed or sold to cable television subscribers wherein marks identifying the source of cable television programs (e.g. "HBO," "SHOWTIME") are also prominently shown. This is further evidence of consumers being exposed to marks of these different but related services. We think it likely that where the cable television services and the programs shown on the cable television stations are offered under the same or similar service marks, viewers would believe that the programs and the cable television services were related to, sponsored by or otherwise approved by the same entity. Cf. Walt Disney Productions, et al. v. Buena Vista Telecommunications, Inc., 217 USPQ 1370 (C.D. Calif. 1982).

Turning to the marks, registrant's "ESSEX" mark is identical to applicant's "ESSEX" mark and is identical to the word portion of applicant's "ESSEX" and design mark. Applicant has

5

characterized the marks as weak marks having a geographical connotation in that they refer to the county of Essex in England. However, aside from the fact that the record is devoid of any evidence to demonstrate whether consumers perceive the term "ESSEX" as a primarily geographical designation, the weakness argument is of no aid to applicant where, as here, the marks are identical (or virtually identical with respect to applicant's "ESSEX" and design mark).

Applicant's argument that registrant's mark connotes a sexually oriented meaning due to the nature of the films produced is without any evidentiary support and is entitled to no weight.

With respect to the third-party "ESSEX" registrations and other evidence of companies using "ESSEX" as part of their names, this is not evidence of weakness of the term in the cable television field since there is nothing of record demonstrating use by others of marks containing the term "ESSEX" in connection with either the services rendered by applicant or those related services rendered by registrant. [4]

In short, we find the marks to be identical in one case and virtually identical in the other; and the services in connection with which the marks are used are, in our view, related activities to which the identical consuming group would be

---

[4] Applicant's references to third-party registrations for electrical and electronic equipment are not believed to be particularly relevant. Even if these registrations evidenced use of the marks for the recited goods (which they do not), these goods are far removed from the services rendered by registrant.

exposed, namely the subscriber-viewer of programs on cable television. We believe that when all the relevant factors are weighed, confusion as to source or sponsorship is likely.

Decision: The refusal of registration in each instance is affirmed.

J. D. Sams

J. E. Rice

G. D. Krugman
Members, Trademark
Trial and Appeal Board

APR 29 1988

7