THIS OPINION IS CITABLE
AS PRECEDENT OF
THE T.T.A.B.

Hearing:
June 10, 1999

Paper No. 28
ejs

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

———

Trademark Trial and Appeal Board

———

Interstate Brands Corporation
and
Interstate Brands West Corporation[1]

v.

McKee Foods Corporation

———

Opposition No. 105,415
to application Serial No. 75/054,497
filed on February 7, 1996

———

Robert D. Hovey of Hovey, Williams, Timmons & Collins for
Interstate Brands Corporation and Interstate Brands West
Corporation

Donald A. Kaul of Dorsey & Whitney P.L.P. for McKee Foods
Corporation

———

Before Cissel, Seeherman and Hairston, Administrative
Trademark Judges.

Opinion by Seeherman, Administrative Trademark Judge:

[1] In its main brief on the case, opposer Interstate Brands
Corporation states that its pleaded registration was assigned,
nunc pro tunc on May 31, 1998, to Interstate Brands West
Corporation, which assignment had been submitted to the Patent
and Trademark Office for recording, but had not yet been
recorded. A check of the office records reveals that the
assignment has now been recorded at Reel 1811, Frame 0363.
Accordingly, Interstate Brands West Corporation has been added
as a party to this proceeding.

Interstate Brands Corporation has opposed the application of McKee Foods Corporation to register YO-YO'S as a trademark for snack cakes.[2] As grounds for opposition opposer has alleged that since as early as 1967, long prior to the February 7, 1996 filing date of applicant's intent-to-use application, opposer has continuously used the trademark HOHOS for cakes; that it owns a trademark registration for HOHOS for cake[3]; that its mark is famous; and that applicant's use of YO-YO'S for snack cakes is likely to cause confusion with opposer's previously used and registered mark HOHOS.

In its answer applicant has denied the salient allegations of the notice of opposition.

The record includes the pleadings; the file of the opposed application; and the testimony, with exhibits, of opposer's witnesses, Mark Dirkes and Stan Osman, and of applicant's witnesses, John Petticord and Chris McKee.[4]

---

[2] Application Serial No. 75/054,497, filed February 7, 1996, asserting a bona fide intention to use the mark in commerce.

[3] Registration No. 862,477, issued December 24, 1968; Section 8 and 15 affidavits accepted and received; renewed.

[4] Opposer also submitted during its rebuttal testimony period 41 articles, taken from various newspapers and magazines, which refer to HOHOS or variations thereof, in order to show "that the mark is a well recognized, strong mark" and a famous mark. On December 4, 1998 applicant filed objections to this submission, stating that the articles are irrelevant. With its brief on the case, applicant further objected to these submissions as not being proper rebuttal. We agree with applicant that these articles constitute improper rebuttal. Proving fame was an element of opposer's case-in-chief. The only reference to the fame of opposer's mark which was made during applicant's testimony period was a question asked by opposer's attorney during the cross-examination of each of applicant's witnesses as

The case has been fully briefed, and both parties were represented at an oral hearing before the Board.

---

to their belief as to whether HOHOs is a famous mark. Opposer cannot, simply by raising the question of fame on cross-examination, cure its failure to submit evidence which is clearly part of its case-in-chief. Accordingly, the articles submitted by opposer during its rebuttal testimony period have not been considered. We would add, though, that applicant's additional objection that the articles are irrelevant is not persuasive.

Applicant also objected to certain of opposer's exhibits introduced during the testimony of Mr. Dirkes and Mr. Osman, and certain of the testimony with respect to those exhibits. Applicant objects to Exhibit 26, an article in the "Wall Street Journal," on the ground of hearsay. Although the statements made in the article would be hearsay if opposer were attempting to use the article to prove the truth of those statements, the article is not hearsay insofar as it is used simply to show that the article was published, and the exhibit has therefore been considered for that purpose. As for what applicant characterizes as Mr. Dirkes' using the article to testify about the state of the market, he merely indicated what the first sentence of the article said. However, his testimony as to whether there has been a resurgence of the HOHOs brand is clearly based on his work experience. As for his testimony that "the article recognizes that [the mark HOHOs] is highly recognized," this comment was made in connection with his giving his opinion that the mark is highly recognized. As a senior vice-president of marketing for opposer, his opinion about the recognition of the mark is acceptable testimony, although the Board will determine the weight to be given such testimony. Similarly, because of his marketing experience, Mr. Dirkes is competent to testify about the meaning of, and draw conclusions from, Exhibit 23, an analysis about buyer overlap for multipack cakes and pies, even though the report was prepared when he was not with the company. Applicant has also objected to Mr. Osman's testimony that "HOHOs" is mentioned in various television shows, some of which references appear in exhibit 28, "because the brands are so well known that virtually everybody understands when you use the word HOHOs or TWINKIES, what you are talking about." Although this testimony is clearly Mr. Osman's opinion, and thus its probative value must be assessed by the Board, the fact that Mr. Osman is an advertising manager provides sufficient foundation for his testimony.

Accordingly, applicant's objections with respect to the testimony regarding exhibits 23, 26 and 28, and the objection to exhibit 26 itself, are overruled.

The record shows that opposer uses the mark HOHOs,[5] in the stylized form shown below, as a trademark for a snack cake made of chocolate cake with a cream filling in a form described as a roll or a log.

# HOHOs

Because there have been several changes in ownership of the mark since it was originally used, opposer has been unable to provide records going back to the first use date-- April 26, 1967--shown in its registration or the issue date of that registration (for the same stylized mark) on December 24, 1968. However, we do have the testimony of Mr. Dirkes, who is personally aware that snack cakes bearing the mark have been continuously sold since 1973.

The HOHOs snack cakes are sold in supermarkets, convenience stores, vending machines, "mom-and-pop" stores and club stores. The sales are made nationwide, and reach approximately two thirds of the states. The cakes are usually marketed in packages of three, which is also the primary packaging used for convenience store sales. The snack cakes are also sold in a two-cake package and, for supermarket sales, a ten-pack carton. Club stores may also

---

[5] Although trademarks are normally depicted in an all-capitalized format in Board opinions, in this case we refer to HOHOs in this manner because it gives a clearer visual impression of the mark.

sell the product in a 16- or 18-cake pack.  Since Mr. Dirkes joined opposer in 1988,[6] an average of 150 million individual HOHOs cakes have been sold every year, with dollar sales since 1988 ranging from $30 to $40 million per year.

HOHOs snack cakes are marketed to children, mothers and young men.  The primary purchasers of HOHOs snack cakes are mothers who buy them for their children, and, for convenience store purchasers, men between 18 and 35, who purchase the two- or three-cake package for individual consumption.

Currently HOHOs snack cakes are advertised primarily through television commercials, although they are also promoted through point-of-sale displays.  Prior to opposer's acquiring the mark, they were also promoted in radio advertising.

Since opposer acquired the mark in 1995 it has produced, at a cost of $500,000, one commercial devoted solely to the HOHOs snack cake, and in 1997 and 1998 spent between $2.5 and $3 million to run this commercial on television.  Prior to opposer's acquiring the HOHOs brand, the mark was also advertised in a few television commercials having copyright dates of 1979 and 1983.  The mark has also received publicity through references to it on several television shows, in some of which it has been the primary

---

[6]  Mr. Dirkes had previously worked for opposer's predecessor.

focus of a joke or a skit. For example, in a clip from "Parker Lewis Can't Lose," a HOHOs snack cake is used in a spoof of a big-game hunt, where the snack cake is treated as bait to lure a student in a school hallway. There was also a segment on the January 5, 1998 "Rosie O'Donnell Show" in which Joan Cusack was challenged to tell the difference between a HOHOs and a YODELS snack cake, and she immediately picked the HOHOs cake. Rosie O'Donnell made a big point of comparing the two snack cakes, pointing out that the HOHOs cake had more cream and was larger. Other television programs on which HOHOs cakes have been mentioned include "Cheers," "ER," "Fired Up" and "Delta."

HOHOs snack cakes have also been mentioned in the comic strip Foxtrot; in the January 7, 1998 strip it is featured in the final, "punchline" frame.

Although applicant's application was based on the assertion of an intention to use the mark, the record shows that applicant did begin using the mark YO-YO'S in June 1996 for a snack cake consisting of two soft devil's food cake rounds with cream between them. The mark YO-YO'S was chosen because the cake resembled a yo-yo, and the name was felt to have a cartoon-like connotation which could allow applicant to use its own cartoon character with it in the future.

From the time the YO-YO'S snack cake was first introduced in June 1996 to the beginning of October 1998,

6

applicant has had sales of $9.9 million, representing over 14 million cartons containing eight cakes in each. Each carton costs less than $2.00. The product was first introduced in the Northeastern part of the country, but is now sold nationwide. The snack cakes are primiarily sold in supermarkets and in mass merchandisers such as Kmart and Wal-Mart.

The intended customers of the snack cakes are working class people. Applicant directs its marketing efforts to mothers who are the actual purchasers of the product, with the recognition that it is the children who influence the purchasing decision. Its primary promotional effort was a tie-in with certain Hanna-Barbera cartoon characters, for which it paid the Cartoon Channel between $50,000 and $100,000. Applicant's original packaging for the YO-YO'S cakes, as well as point-of-sale displays, featured these characters, although the agreement has now ended and applicant's current packaging has been redesigned. Applicant's witness was unable to recall the amount spent on promotional materials.

Priority is not in issue in view of opposer's pleaded registration for HOHOs, which has been made of record. Moreover, opposer has established that it first began using the HOHOs mark on snack cakes long before the filing of applicant's intent-to-use application on Febuary 7, 1996.

7

In fact, both of applicant's witnesses testified that they were aware of opposer's HOHOs mark at the time applicant decided to adopt the mark YO-YO'S.

This brings us to the question of likelihood of confusion. In making this determination, we have considered all the factors set forth in **In re E.I. du Pont de Nemours & Co.**, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973), which are relevant to this case. Our determination is that confusion is likely.

Turning first to the goods, we hold that they are legally identical. Applicant's goods are identified in its application as "snack cakes," and opposer's registration identifies its product as "cake," which term encompasses snack cakes. Moreover, the record shows that the actual goods that opposer sells under the HOHOs mark are snack cakes which are extremely similar to applicant's snack cakes, both being made of chocolate cake with a cream filling.

Applicant attempts to distinguish the parties' goods based on their shapes, and the fact that applicant's goods are referred to as "soft sandwich cookies" on the packaging. However, as noted above, in its application applicant has identified its goods as "snack cake", and its witness John Petticord acknowledged that both parties' goods are snack cakes. Moreover, it is well established that in a

8

proceeding such as this, the question of likelihood of confusion must be determined on the basis of an analysis of the mark as applied to the goods and/or services recited in applicant's application vis-à-vis the goods and/or services recited in an opposer's registration, rather than what the evidence shows the goods and/or services to be. **Canadian Imperial Bank of Commerce v. Wells Fargo Bank, NA**, 811 F.2d 1490, 1 USPQ2d 1813 (Fed. Cir. 1987). There is nothing about applicant's identification which would prevent it from using the mark on a snack cake made in the same roll or log shape as is opposer's product.

Because the goods are legally identical, they must also be deemed to be sold in the same channels of trade to the same classes of customers. In fact, both parties' goods are sold in supermarkets, where they may be found in the same part of the store, and they are marketed to, and purchased by, mothers and children.

Applicant argues that in supermarkets the parties' goods are sold in separate sections, and often on separate display racks, with its YO-YO'S snack cakes sold with applicant's other LITTLE DEBBIE products, and opposer's HOHOs sold with other HOSTESS products. However, the section of LITTLE DEBBIE products may be displayed on a shelf next to the section of HOSTESS products, so that HOHOs

9

and YO-YO'S snack cakes may appear next to or in close proximity to each other.

We turn next to a consideration of the marks, keeping in mind that when marks would appear on virtually identical goods, as here, the degree of similarity necessary to support a conclusion of likely confusion declines. See, **Century 21 Real Estate Corp. v. Century Life of America**, 970 F.2d 874, 23 USPQ2d 1698, 1700 (Fed. Cir. 1992).

Both marks are highly similar in sound, since YO-YO'S directly rhymes with HOHOs. Similarity in either form, spelling or sound alone may be sufficient to support a finding of likelihood of confusion. See **Krim-Ko Corp. v. Coca-Cola Co.**, 390 F.2d 728, 156 USPQ 523, 526 (CCPA 1968), sustaining the Board's finding of likelihood of confusion between VEEP for carbonated flavored beverages sold as soft drinks and for use as mixers and BEEP for a fruit juice drink base. Applicant argues that the similarity in sound is not dispositive because these products are selected by consumers from a shelf or rack. However, one may purchase products based on another's oral request or recommendation, in which case confusing similarity in the sound of a mark can certainly lead to confusion. And, since both parties' products are marketed to children, it seems highly probable that a child could ask a parent to buy HOHOs snack cakes and

10

the parent, seeing YO-YO'S snack cakes, might well think this was the requested product.

The marks are also similar in appearance, in that both contain a repeating sequence of a consonant and an "O", followed by an "s" which is visually separated from the repeating sequences, in the case of HOHOs by the smaller size of the letter, and in the case of YO-YO'S, by the apostrophe.

Given that HOHOs and YO-YO'S snack cakes may be displayed on adjoining grocery or convenience store shelves, and given that these are inexpensive, impulse items, a consumer might well mistake one mark for another.

We also note that opposer has used certain variations of its HOHOs mark for its snack cakes. It has submitted commercials for a variant of the HOHOs snack cake called NUTTY HOHOs, and during the Christmas season it markets the snack cake with special packaging showing Santa Claus and varying the HOHOs trademark to HOHOHOs. Given these practices by opposer, even if consumers were to notice the difference between YO-YO'S and HOHOs, they might well think that this mark was a variant of the HOHOs mark, adopted by opposer because of the round shape of the snack cake.

We agree with applicant that HOHOs and YO-YO'S have different connotations, in that "ho ho" is the laugh sound one frequently associates with Santa Claus, and a "yo-yo" is

11

a spinning toy. However, as noted above, it is not necessary that marks be similar in all three of the elements of sight, sound and meaning to support a finding of likelihood of confusion. For the reasons we have already stated, in this case the similarities in sound and appearance outweigh the differences in connotation.

The strength of opposer's mark is another factor which must be considered in determining likelihood of confusion. Indeed, to the extent a mark is famous, that fame may play a dominant role. **Kenner Parker Toys Inc. v. Rose Art Industries, Inc.**, 963 F.2d 350, 22 USPQ2d 1453 (Fed. Cir. 1992).

In this case, there is no evidence of any third-party use of similar trademarks in the snack cake field. Further, opposer has used its mark for more than 25 years, and has produced evidence of sales of $30 to $40 million each year since 1989, earlier sales records being

---

Applicant refers in its brief to YODELS as another well-known brand of snack cakes, but applicant's witness McKee testified that the Drake Company, the maker of this product, had been acquired by opposer. Applicant also points to the testimony of Mr. Dirkes as support for the statement in its brief that Howard Johnson markets ice cream and food products under the mark HOJO. In fact, Mr. Dirkes' testimony is that, with respect to the "brand Howard Johnson," "Howard Johnson's is a restaurant chain. They have a lot of ice cream. They are a hotel chain. … They had some soup, things that were sold in the restaurant." He was then asked if he was familiar with the trademark HOJO used for Howard Johnson's, to which he replied "yes," and then he was asked about similiarity between HOHOs and HO JO. It is not clear to us that Mr. Dirkes' was testifying that the trademark HO JO was being used for ice cream and soup; in any event, such products are not in the snack cake field.

unavailable because opposer did not acquire the mark until 1995. Although the only advertising expenditures which are of record are $3 to $3½ million for producing and broadcasting a television commercial which opposer ran in 1997-98, there is evidence that opposer's predecessor produced other radio and television commercials. The record also shows that the mark has been promoted through point-of-sale displays. Perhaps more importantly in terms of promotion, HOHOs cakes have been featured in several television programs and in a comic strip. As applicant points out, some of these mentions of HOHOs cakes are the result of the efforts of a product placement agency employed by opposer. However, the fact that opposer employs such an agency does not take away from the fact that HOHOs snack cakes were indeed mentioned on a number of popular television shows. Such mentions may even have a greater impact on the viewing public than commercials do, since most viewers are more interested in watching programs than in watching commercials. Further, whether or not the mentions were the result of the product placement company's efforts, the mentions on the programs and in the comic strip are evidence that those responsible for the programs and comic believe that the public is familiar with HOHOs snack cakes, since such recognition would be necessary for the jokes and comments to make sense to the audience.

As a result of all of the sales and promotional activity, we find opposer's mark HOHOs to be a strong mark which enjoys a high degree of recognition.

One of applicant's major arguments as to why confusion is unlikely rests on the inclusion of applicant's house marks, LITTLE DEBBIE and/or the portrait of a little girl, on the packaging for its YO-YO'S snack cakes, and the inclusion of opposer's house mark, HOSTESS, on opposer's packaging. In fact, both of applicant's witnesses referred to this point to support their opinion that confusion of the marks would not result.[8] However, applicant has not applied to register the mark LITTLE DEBBIE YO-YO'S, but the mark YO-YO'S per se, and if a registration were to issue for this mark, applicant would be free to use it without the LITTLE DEBBIE house marks. Similarly, opposer's registration is for the mark HOHOs, not HOSTESS HOHOs. Thus, our determination of likelihood of confusion must be based on the specific marks at issue.

---

[8] Mr. McKee also stated, in support of his belief that confusion is unlikely, that the products are dissimilar. The dissmilarity he is alluding to seems to be primarily that of shape, since both parties' products are snack foods containing chocolate cake and cream filling. As noted previously, any such argument is to no avail since the products as described in the respective application and registration are legally identical. If applicant were to obtain a registration for YO-YO's for snack cakes, such a registration would extend to use of the mark on roll or log shaped snack cakes such as those on which opposer uses the HOHOs mark. Such an occurrence would not be farfetched, in that applicant actually does make a snack cake which looks extremely similar to opposer's HOHOs snack cake.

14

Applicant also points out that there is no evidence of actual confusion. Although applicant has enjoyed excellent sales since its YO-YO'S snack cakes were first introduced in the summer of 1996, the time period in which both products have been on the market has been relatively brief—a little more than two years at the time of applicant's testimony.

We cannot conclude based on the $9.8 million of sales alone that there has been sufficient opportunity for confusion to occur, and that the lack of instances of actual confusion is adequate to demonstrate that confusion is not likely. In this connection, we note that one of the major outlets through which applicant sells its snack cakes is mass merchandisers, and opposer has not indicated that it makes sales through such stores. In any event, to be successful in an opposition an opposer need prove only likelihood of confusion, not actual confusion.

Finally, applicant asserts that it adopted the trademark YO-YO'S in good faith, pointing out that it chose the mark, in part, because the cake resembled a yo-yo, and also that, when it discovered through a trademark search that General Foods owned a registration for YOYOS for cereal derived snacks, it contacted that company and succeeded in having General Foods cancel its registration. Although we agree with applicant that there is no evidence that it had any bad intent in adopting its mark, the fact remains that

applicant and opposer are competitors, and that applicant was well aware of opposer's mark HOHOs when it adopted the mark YO-YO'S. Thus, although we have no doubt that confusion is likely in this case, we think it appropriate to reiterate the well-established principle that one who adopts a mark similar to the mark of another for the same or closely related goods or services does so at his own peril, and any doubt as to the similarity of the marks must be resolved against him. **State Historical Society of Wisconsin v. Ringling Bros.-Barnum & Bailey Combined Shows, Inc.**, 190 USPQ 25 (TTAB 1976); see also, **United Merchants & Mfrs., Inc. v. R.A. Products, Inc.**, 159 USPQ 714 (CCPA 1968).

Decision: The opposition is sustained.

R. F. Cissel

E. J. Seeherman

P. T. Hairston
Administrative Trademark Judges
Trademark Trial and Appeal Board

28 JAN 2000