THIS DECISION HAS BEEN
DESIGNATED AS CITABLE
PRECEDENT OF THE
TRADEMARK TRIAL AND APPEAL
BOARD.

UNITED STATES PATENT AND TRADEMARK OFFICE
Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA 22313-1451

Baxley

Mailed: January 23, 2006

Cancellation No. 92043947

Fram Trak Industries, Inc.

v.

WireTracks LLC

Before Hohein, Rogers and Zervas,
Administrative Trademark Judges

By the Board:

WireTracks LLC ("respondent") registered the mark WIRETRACKS in standard character form for "plastic conduit for use in electrical installations and electrical use" in International Class 9.[1]

Fram Trak Industries, Inc. ("petitioner") filed a petition to cancel respondent's registration on the ground of priority of use and likelihood of confusion with petitioner's previously used marks WIRE TRAK and WIRE TRAK and design, both for "conduits, covers and guides for electrical, telephone, and signal wires and for coaxial and

---

[1] Registration No. 2883311, issued September 7, 2004, based on application Serial No. 78255230 (filed May 28, 2003), and alleging March 3, 2003 as the date of first use and date of first use in commerce.

fiber optic cables."[2]  In its answer, respondent denied the salient allegations of the petition to cancel and asserted affirmative defenses.

This case now comes up for consideration of petitioner's motion (filed August 22, 2005) for summary judgment in its favor on the priority of use and likelihood of confusion claim and respondent's cross-motion (filed September 19, 2005) for summary judgment in its favor on such claim.  Each party has filed a brief in opposition to its adversary's motion.[3]

In support of its motion, petitioner contends that discovery has revealed that petitioner's use of its pleaded marks predates respondent's use of its involved mark and that therefore petitioner is entitled to entry of summary

---

[2] Petitioner filed application Serial No. 78289780 to register its pleaded WIRE TRAK and design mark in the following form:



for "conduits, covers and guides for electrical, telephone, and signal wires and for coaxial and fiber optic cables" in International Class 9 on August 20, 2003 under Trademark Act Section 1(a), 15 U.S.C. Section 1051(a), alleging July 3, 2002 as the date of first use and date of first use in commerce.  On September 8, 2004, the examining attorney refused registration of that mark under Trademark Act Section 2(d), 15 U.S.C. Section 1052(d), based on likelihood of confusion with the mark in registrant's involved registration.

[3] Petitioner captioned its brief in response to respondent's cross-motion for summary judgment as a "reply brief in support of its motion for summary judgment."  However, inasmuch as petitioner's motion for summary judgment and respondent's cross-motion for summary judgment involve the same issues of law and fact, we will treat petitioner's reply brief as being both a reply brief in support of petitioner's motion for summary judgment and a brief in response to respondent's cross-motion for summary judgment.

judgment in its favor. In particular, petitioner contends that it has standing to maintain this proceeding by virtue of its ownership and prior use of the pleaded marks and because registration of its pleaded WIRE TRAK and design mark was refused under Trademark Act Section 2(d), 15 U.S.C. Section 1052(d), based on likelihood of confusion with respondent's registered mark; that it first sold its pleaded goods under the WIRE TRAK mark on July 3, 2002; that the products sold under the WIRE TRAK mark on July 3, 2002 were shipped in a box with a label that bore the WIRE TRAK mark; that petitioner developed packaging for its pleaded goods sold under the WIRE TRAK mark in late 2001 and early 2002 and first sold goods under the WIRE TRAK mark in that packaging in 2002; that respondent did not sell its involved goods under the WIRETRACKS mark until April 7, 2003; that, in view of respondent's failure to respond to petitioner's requests for admission, respondent has conceded the issue of priority; that the parties admit that the marks at issue are "confusingly similar"; that the goods at issue are "virtually identical"; that petitioner registered the domain name wiretrakusa.com on February 3, 2003; and that a catalog of products that petitioner sells under the WIRE TRAK mark was printed on March 5, 2003. Accordingly, petitioner contends that there is no genuine issue of material fact with regard to its priority of use and likelihood of

3

confusion claim and asks that the Board enter summary judgment in its favor.

As evidentiary support for its motion, petitioner submitted the declaration of its chief executive officer, Albert Santelli, Sr., wherein Mr. Santelli avers to the following:  that petitioner is a plastic extrusion and injection molding company that has designed and manufactured custom plastic extrusions and other proprietary products since 1978; that petitioner's goods include nonmetal wire management systems sold under the WIRE TRAK mark; that petitioner's Alpha plastics division sold wire enclosure products under the ALPHA and ALPHA TRIM marks since 1949; that, in 2001 and 2002, petitioner upgraded those wire enclosure products and changed the mark under which they were sold to WIRE TRAK; that petitioner received its first order for its pleaded goods sold under the WIRE TRAK mark on June 26, 2002 and shipped such goods in packaging bearing the WIRE TRAK mark on July 3, 2002;[4] that petitioner has

---

[4] Mr. Santelli asserts in his declaration that petitioner has used the WIRE TRAK mark on its pleaded goods "since at least as early as July 2, 2002."  Santelli declaration at paragraph 9. Elsewhere in his declaration, however, Mr. Santelli states that petitioner received the first order for sales of goods under the WIRE TRAK mark on June 26, 2002 and shipped its pleaded goods in that order on July 3, 2002.  Santelli declaration at paragraphs 21-24.  In addition, petitioner's pleaded application Serial No. 78289780 recites July 3, 2002 as the date of first use and date of first use in commerce.  Accordingly, the Board presumes that the date set forth in paragraph 9 is a typographical error and that Mr. Santelli meant to assert that petitioner has used the WIRE TRAK mark on the pleaded goods since at least as early as July 3, 2002.

continuously sold its pleaded goods under that mark since that time; that petitioner had packaging in the form of polyethylene bags bearing the WIRE TRAK and design mark designed and manufactured in 2002; that petitioner first used this packaging in 2002 and has used it since that time; that petitioner registered the domain name wiretrakusa.com on February 3, 2003; and that a catalog for petitioner's pleaded goods under the WIRE TRAK mark was printed on March 5, 2003.

Evidence introduced by way of Mr. Santelli's declaration includes the following: (i) invoices for customized polyethylene bags used as packaging for goods sold under the WIRE TRAK mark; (ii) samples of polyethylene bags used as packaging for goods sold under the WIRE TRAK mark; (iii) a copy of a July 3, 2002 invoice from a sale of goods to Wallco, Inc.; (iv) a label dated April 24, 2003 which bears the WIRE TRAK mark, which Mr. Santelli contends is an example of the label used in the July 3, 2002 sale; (v) results of an online search of the "Whois" database which indicates that the domain name wiretrakusa.com was created by petitioner on February 3, 2003; (vi) invoices in connection with preparation of catalogs for petitioner's goods under the WIRE TRAK mark; (vii) a sample catalog of petitioner's goods sold under the WIRE TRAK mark; (viii) invoices in connection with preparation of t-shirts bearing

the WIRE TRAK mark; (ix) invoices in connection with the preparation of petitioner's website located at wiretrakusa.com; (x) a copy of the contents of petitioner's website located at wiretrakusa.com which shows petitioner's pleaded goods offered for sale under the WIRE TRAK mark; and (xi) a summary of petitioner's individual sales under the WIRE TRAK mark between July 2002 and August 2005 that lists customers and items sold by product number.[5]

In addition, petitioner has submitted the declaration of its attorney, Todd Denys, which introduces exhibits including (i) a printout from the USPTO's Trademark Electronic Search System (TESS) of petitioner's pleaded application Serial No. 78289780 for the WIRE TRAK and design mark; (ii) a copy of the notice of the discovery deposition of respondent's president, Bruce Gutman, and excerpts from that deposition wherein Mr. Gutman states that respondent's first sale of the identified goods under the involved mark was on April 7, 2003; (iii) a copy of petitioner's first set of requests for admission; (iv) a copy of Mr. Denys's August 4, 2005 letter to respondent's attorney which states that, inasmuch as respondent failed to serve responses to

---

[5] The part numbers set forth in the July 3, 2002 sales invoice and petitioner's sales summary are not exact matches to the part numbers set forth in petitioner's catalog, but are similar thereto. For example, petitioner's sales summary indicates that it made a sale on August 19, 2002 to Interstate Electronics of part numbers FEO201125SRWHT6, FE020500SRWHT6, and FE020375SRWHT6, but the catalog identifies parts by the numbers FE0201125R-W, FEO201125R-W, FE020500R-W, and FE020375R-W.

petitioner's first set of requests for admission, those requests for admission are deemed admitted; (v) results of an online search of the "Whois" database which indicates that the domain name wiretracks.com is registered to The Gutman Group and that Mr. Gutman is the administrative and technical contact with regard thereto; (vi) an undated cease-and-desist letter from Mr. Gutman, which Mr. Denys received on November 18, 2004; (vii) printouts from the cableorganizer.com website which show both petitioner's and respondent's goods being offered for sale; and (viii) a copy of the September 8, 2004 Office Action in connection with application Serial No. 78289780 wherein the WIRE TRAK and design mark was refused registration under Trademark Act Section 2(d) based on likelihood of confusion with respondent's registered WIRETRACKS mark.

In response and in support of its cross-motion for summary judgment, respondent contends that it has priority over petitioner because it "was the first to make an impact in the public perception." Respondent's brief at 4. In particular, respondent contends that there is no evidence that petitioner advertised or marketed goods sold under the WIRE TRAK mark prior to respondent's advertising and marketing of goods under the WIRETRACKS mark; that petitioner's "sales are based on its previous product line, not advertising or marketing efforts" (respondent's brief at

7

11); that respondent has made significant marketing and advertising efforts such that a significant portion of the relevant purchasing public would associate respondent's mark with its identified goods; that respondent's involved goods differ from those of petitioner in that respondent's are "high end, innovative products which have been the subject of patent protection" (respondent's brief at 10); that petitioner has provided no advertising and marketing expenses in connection with goods sold under the WIRE TRAK mark; that petitioner's WIRE TRAK mark has little or no recognition in the relevant market; and that the WIRE TRAK mark does not appear on the invoice for petitioner's first sale of goods under that mark. Accordingly, respondent asks that petitioner's motion for summary judgment be denied and that summary judgment be entered in respondent's favor.

As evidentiary support for its motion, respondent included the declaration of its president, Mr. Bruce Gutman, wherein he alleges that respondent registered its wiretracks.com domain name on December 23, 2002, whereas petitioner did not register its wiretrakusa.com domain name until February 3, 2003; that respondent began generating significant press coverage in April 2003; that respondent began advertising goods under its WIRETRACKS mark in April 2003; that respondent had substantial sales from 2003 to 2005; that respondent has exhibited goods under its

8

WIRETRACKS mark at six trade shows, in three show homes and at other events; that respondent's goods have been the subject of articles in more than fifty magazines and other publications; that respondent's public relations e-mail lists contain more than 5,000 contacts; and that respondent's goods sold under the WIRETRACKS mark were tested and recommended by *Handy* magazine, a magazine with more than 1,000,000 readers.

Evidence introduced by way of Mr. Gutman's declaration includes the following: (i) results of online searches of the "Whois" database which indicate that respondent's domain name wiretracks.com was created on December 23, 2002, while petitioner's domain name wiretrakusa.com was not created until February 3, 2003; (ii) magazine and other publication articles concerning respondent's goods sold under the WIRETRACKS mark; (iii) an invoice for respondent's first sale of goods under the WIRETRACKS mark dated April 7, 2003; (iv) lists of contacts made by respondent at trade shows; (v) printouts from websites which support respondent's appearances at trade shows; (vi) an excerpt from respondent's customer telephone list; (vii) a summary of respondent's advertising expenses from April 2003 to February 2005; (viii) a copy of respondent's public relations e-mail list; and (ix) a certificate indicating

that respondent's goods were named one of the top 100 "lead-generating products of 2004" by *Building Products* magazine.

Summary judgment is an appropriate method of disposing of cases in which there are no genuine issues of material fact in dispute, thus leaving the case to be resolved as a matter of law. See Fed. R. Civ. P. 56(c). The party moving for summary judgment has the initial burden of demonstrating that there is no genuine issue of material fact remaining for trial and that it is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1987); *Sweats Fashions Inc. v. Pannill Knitting Co. Inc.*, 833 F.2d 1560, 4 USPQ2d 1793 (Fed. Cir. 1987). The nonmoving party must be given the benefit of all reasonable doubt as to whether genuine issues of material fact exist, and the evidentiary record on summary judgment, and all inferences to be drawn from the undisputed facts, must be viewed in the light most favorable to the nonmoving party. See *Opryland USA, Inc. v. Great American Music Show, Inc.*, 970 F. 2d 847, 23 USPQ2d 1471 (Fed. Cir. 1992).

When the moving party's motion is supported by evidence sufficient to indicate that there is no genuine issue of material fact, and that the moving party is entitled to judgment, the burden shifts to the nonmoving party to demonstrate the existence of specific genuinely-disputed facts that must be resolved at trial. The nonmoving party

may not rest on the mere allegations of its pleadings and assertions of counsel, but must designate specific portions of the record or produce additional evidence showing the existence of a genuine issue of material fact for trial. In general, to establish the existence of disputed facts requiring trial, the nonmoving party "must point to an evidentiary conflict created on the record at least by a counterstatement of facts set forth in detail in an affidavit by a knowledgeable affiant." *Octocom Systems Inc. v. Houston Computer Services Inc.*, 918 F.2d 937, 941, 16 USPQ2d 1783, 1786 (Fed. Cir. 1990).

As a party moving for summary judgment in its favor on its Section 2(d) claim, petitioner must establish that there is no genuine dispute that (1) it has standing to maintain this proceeding; (2) that it is the prior user of its pleaded mark; and (3) that contemporaneous use of the parties' respective marks on their respective goods would be likely to cause confusion, mistake or to deceive consumers. See *Hornblower & Weeks, Inc. v. Hornblower & Weeks, Inc.*, 60 USPQ2d 1733, 1735 (TTAB 2001). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it would have the burden of proof at trial, judgment as a matter of law may be entered in

11

favor of the moving party.[6]  See Fed. R. Civ. P. 56(c);

*Celotex Corp. v. Catrett*, 477 U.S. at 322-23.

With regard to whether petitioner has standing to maintain this proceeding, we note that respondent has not challenged petitioner's standing to cancel the involved registration.  We find that the evidence of petitioner's use of the WIRE TRAK mark and the fact that respondent's involved mark was cited as a bar to registration of petitioner's WIRE TRAK and design mark as set forth in petitioner's pending application is sufficient to establish petitioner's standing in this case.  No genuine issue of material fact exists on this issue.

We turn next to the issue of whether there is a genuine issue of material fact regarding petitioner's asserted priority of use.  To establish priority on a likelihood of confusion ground brought under Trademark Act Section 2(d), a party must prove that, vis-a-vis the other party, it owns "a mark or trade name previously used in the United States ... and not abandoned...."  Trademark Act Section 2, 15 U.S.C. Section 1052.  A plaintiff may establish its own prior proprietary rights in a mark through actual use or through use analogous to trademark use, such as use in advertising brochures, trade publications, catalogues, newspaper

---

[6] Respondent's cross-motion for summary judgment in its favor on petitioner's claim under Section 2(d) is primarily based on respondent's alleged priority of use.

advertisements and Internet websites which creates a public awareness of the designation as a trademark identifying the party as a source. See Trademark Act Sections 2(d) and 45, 15 U.S.C. Section 1052(d) and 1127; *T.A.B. Systems v. PacTel Teletrac*, 77 F.3d 1372, 37 USPQ2d 1879 (Fed. Cir. 1996), vacating *PacTel Teletrac v. T.A.B. Systems*, 32 USPQ2d 1668 (TTAB 1994).

Respondent failed to respond to petitioner's requests for admission and failed to file a motion to amend or withdraw those admissions. Accordingly, those requests for admission are deemed admitted and conclusively established. See Fed. R. Civ. P. 36(a); TBMP Section 525 (2d ed. rev. 2004). Through those admissions, respondent, by operation of law, has admitted that its first sale under the WIRETRACKS mark occurred on April 7, 2003 and that respondent has no documents which establish use of the involved mark prior to March 3, 2003. However, these admissions do not by themselves establish that there is no genuine issue of material fact that petitioner is the prior user of the marks at issue in this proceeding, i.e., that petitioner's use predates the dates referenced in the requests for admission.

Notwithstanding the foregoing, petitioner has established that there is no genuine issue of fact regarding its priority of use and that it used its pleaded WIRE TRAK

mark prior to any date upon which respondent can rely for use of the WIRETRACKS mark. With regard to the parties' respective uses of their marks, petitioner has established, through the declaration of Mr. Santelli, that it made its first actual use of the WIRE TRAK mark on July 3, 2002 by selling its pleaded goods under that mark and has continuously used the mark since then. Although the WIRE TRAK mark does not appear on petitioner's invoice for the first sale of goods under that mark, Mr. Santelli stated under oath that packaging in which those goods were shipped included a label bearing that mark and that petitioner's goods have been packaged in polyethylene bags bearing the WIRE TRAK mark since 2002. Mr. Santelli's declaration is internally consistent and not characterized by uncertainty. See *Hornblower & Weeks, Inc. v. Hornblower & Weeks, Inc.*, *supra* at 1736. In addition, respondent has not challenged the veracity or the basis for the testimony of Mr. Santelli. As such, we find his declaration credible and persuasive. Further, the summary of sales under the WIRE TRAK mark that petitioner submitted in support of its motion for summary judgment indicates that petitioner made significant sales under the WIRE TRAK mark between its first sale on July 3, 2002 and respondent's first sale on April 7, 2003.[7]

---

[7] We note that the sales summary was prepared two days prior to the filing of petitioner's motion for summary judgment and that the header on each page of that summary spells petitioner's mark

On the other hand, respondent has admitted that it did not sell its involved goods under its WIRETRACKS mark until April 7, 2003. Even if respondent promoted and advertised its WIRETRACKS mark extensively, such promotion and advertisement does not overcome the fact that petitioner used its WIRE TRAK mark first. Although respondent registered the domain name <u>wiretracks.com</u> on December 23, 2002, we note that the domain name differs from the registered mark, and that such registration occurred more than five months after petitioner commenced using the WIRE TRAK mark.[8] As such, there is no genuine issue of material fact that petitioner is the prior user of its pleaded WIRE TRAK mark.

Turning to the likelihood of confusion issue, two key factors are the degree of similarity of the parties' marks and the degree of similarity of their respective goods. See *Federated Foods, Inc. v. Fort Howard Paper Co.,* 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976). As to the word marks at issue, WIRE TRAK and WIRETRACKS, the marks differ in that petitioner's mark is two words, whereas respondent's is one; petitioner's mark is singular, whereas respondent's is

---

as "WIRETRAK." However, we view this misspelling as a compound word rather than as two words to be merely a typographical error.

[8] In any event, acquisition of a domain name cannot, by itself, establish priority of use. See *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 50 USPQ2d 1545, 1556 (9th Cir. 1999).

plural; and respondent's mark includes the letter C, whereas petitioner's does not.[9]  Nonetheless, the evidence establishes that, when these marks are considered in their entireties, there is no genuine issue of material fact that they are substantially similar in sound, appearance, and commercial impression.  See *In re Appetito Co. Inc.*, 3 USPQ2d 1553 (TTAB 1987).  The design element in the mark which is the subject of petitioner's pleaded application is insufficient to create a genuine issue of material fact as to the similarities of the marks.  See *Herbko International, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 64 USPQ2d 1375 (Fed. Cir. 2002) (words are dominant portion of mark); *Ceccato v. Manifatura Lane Gaetano Marzetto & Figli S.p.A.*, 32 USPQ2d 1192 (TTAB 1994) (literal portion of mark makes greater and long lasting impression).

With regard to the similarity of the goods at issue, it is well settled that the question of likelihood of confusion must be determined based on an analysis of the goods recited in respondent's registration vis-à-vis the goods recited in petitioner's petition to cancel, rather

---

[9] In its answer, respondent denied that the marks at issue are confusingly similar.  See answer at paragraph 7.  Petitioner's requests for admission which are deemed admitted do not include an admission that the marks at issue are confusingly similar.  However, respondent, in its brief in response to petitioner's motion for summary judgment and in support of its cross-motion for summary judgment did not address the assertion in petitioner's brief in support of its motion for summary judgment that the marks are confusingly similar.

than what respondent's goods are asserted or shown to actually be. See, e.g., *Octocom Systems Inc. v. Houston Computer Services Inc.*, 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990); *Canadian Imperial Bank of Commerce, N.A. v. Wells Fargo Bank*, 811 F.2d 1490, 1 USPQ2d 1813 (Fed. Cir. 1987). As such, the goods identified in registrant's involved registration, i.e., "plastic conduits for use in electrical installations and electrical use," are presumed to overlap with those which, as identified in petitioner's pleaded application and as shown to be by the evidence, are "conduits, covers and guides for electrical, telephone, and signal wires and for coaxial and fiber optic cables." As such, respondent's goods would travel in all the normal channels of trade for goods of these types, such as through electrical supply outlets and distributors, and that they would be purchased by the same class of customers. See *id.* Indeed, the record shows that both parties' goods are sold through the website cableorganizer.com and that petitioner's goods are sold through electrical supply outlets and distributors.

Based on the foregoing, we find that petitioner has met its burden by supporting its motion with declarations and other evidence which establish its right to judgment. Accordingly, the burden shifts to respondent to proffer

countering evidence which establishes that there is a genuine factual dispute for trial.  However, the evidence that respondent submitted in support of its cross-motion and in response to petitioner's motion is insufficient to show that there is a genuine issue of material fact for trial. In summary, considering the substantial similarity in sound, appearance, and commercial impression of the marks and the overlapping nature of the goods, trade channels and purchasers, we find that there is no genuine issue of material fact and that confusion is likely to result.

In view thereof, petitioner's motion for summary judgment is granted, and respondent's cross-motion for summary judgment is denied.  Judgment is hereby entered against respondent, the petition to cancel is granted, and Registration No. 2883311 will be cancelled in due course.