THIS DISPOSITION IS
CITABLE AS PRECEDENT
OF THE TTAB

Hearing:                                    Paper No. 53
January 23, 2002                               Bottorff
                                  Mailed:  July 17, 2002

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

Time Warner Entertainment Company L.P.
v.
Karen L. Jones

_____

Opposition No. 112,409
to application Serial No. 75/352,605
filed on September 5, 1997

_____

Michael A. Grow and Christina A. Carvalho of Arent Fox
Kintner Plotkin & Kahn, PLLC for Time Warner
Entertainment Company L.P.

Eric B. Zimbelman of Romero Montague, P.S. for Karen L.
Jones.

_____

Before Bucher, Bottorff and Rogers, Administrative
Trademark Judges.

Opinion by Bottorff, Administrative Trademark Judge:

    In this opposition proceeding, Time Warner

Entertainment Company L.P. (opposer) opposes the

application of Karen L. Jones (applicant) for

registration of the mark ROADRUNNER MAPS (and design),

depicted below, for "road maps."[1]  Applicant has

disclaimed the exclusive right to use MAPS apart from the

mark as shown.



As grounds for its opposition, opposer has alleged a

likelihood of confusion claim under Trademark Act Section

2(d) based on its prior use and registration of various

ROAD RUNNER marks for a variety of goods,[2] and a claim of

---

[1] Serial No. 75/352,605, filed September 5, 1997.  The application is based on use in commerce under Trademark Act Section 1(a), 15 U.S.C. §1051(a).  July 28, 1988 is alleged in the application as the date of first use of the mark, and October 10, 1988 is alleged as the date of first use of the mark in commerce.

[2] More specifically with respect to the registrations relied upon by opposer in this case, we note the following.  In the notice of opposition, opposer alleged (at paragraph 2) that it "has obtained several federal registrations for its ROAD RUNNER mark, including Registration Nos. 2,000,037; 2,157,957 and 1,288,072."  Thus, only three registrations were identified by number in the notice of opposition.  At trial, opposer submitted (by notice of reliance) status and title copies of two of those

"false suggestion of a connection" under Trademark Act

Section 2(a).[3]  Applicant filed an answer by which she

denied the allegations in the notice of opposition which

are essential to opposer's Section 2(d) and Section 2(a)

claims.[4]  Both parties presented testimony and other

---

pleaded registrations (omitting Reg. No. 2,157,957), as well as of seven additional unpleaded registrations, i.e., Registration Nos. 2,135,226, 1,946,471, 1,915,162, 950,384, 1,872,562, 1,927,458 and 1,950,585.  Applicant has raised no objection to opposer's submission of and reliance upon these unpleaded registrations.  In view of applicant's lack of objection, we find that the parties have tried, by implied consent, any issues which arise from those additional seven registrations, and we therefore deem the pleadings to be amended to include opposer's claim of ownership of those seven additional registrations.  *See* Fed. R. Civ. P. 15(b); *Hewlett-Packard Co. v. Human Performance Measurement Inc.*, 23 USPQ2d 1390, fn. 7 (TTAB 1991); *cf*. *Long John Silver's, Inc. v. Lou Scharf Incorporated,* 213 USPQ 263, 266, fn. 6 (TTAB 1982); *Boise Cascade Corp. v. Cascade Coach Company*, 168 USPQ 795, 797 (TTAB 1970).  However, inasmuch as opposer's pleaded Registration No. 2,157,957 was not made of record, we have not considered it.

[3] In the notice of opposition, opposer also alleged claims of "deceptiveness" and "disparagement" under Section 2(a), but has presented no evidence or argument in support of those grounds.  Accordingly, opposer is deemed to have waived those claims.  Additionally, in its order dated August 31, 2001, the Board denied opposer's motion under Fed. R. Civ. P. 15(a) for leave to amend the notice of opposition to add a claim based on applicant's alleged non-ownership of the mark for which registration is sought, and we have given no consideration to the arguments the parties have made in their briefs pertaining to that issue.

[4] In her answer, applicant also asserted, as an affirmative defense, that

> Opposer's opposition to Applicant's mark is motivated
> by a desire to restrain trade and create a monopoly
> in any mark or potential mark containing the word
> "roadrunner" and/or using, relating to, or referring
> to a drawing of a roadrunner, no matter how

evidence at trial.  The case has been fully briefed, and both parties were represented at an oral hearing before the Board.

After careful consideration of the evidence in the record and the arguments of the parties, and for the reasons discussed below, we sustain the opposition as to the Section 2(d) claim, but dismiss the opposition as to the Section 2(a) claim.

The record includes the pleadings and the file of the opposed application.  Additionally, opposer, in

---

dissimilar to Opposer's design.  Opposer is asserting rights greater than those it possesses as a result of its registrations.  Opposer is therefore misusing its mark and registrations.

Applicant has not presented any evidence or argument specifically directed to this defense, and therefore may be deemed to have waived it.  More fundamentally, to the extent that this defense is based on an alleged violation of the antitrust laws by opposer, it will not be heard because the Board has no jurisdiction over such issues.  *See Yasutomo & Co. v. Commercial Ball Pen Co., Inc.*, 184 USPQ 60 (TTAB 1974).  To the extent that this defense is intended as an equitable "unclean hands" defense based on opposer's allegedly overzealous enforcement of its trademark rights, we find that applicant has failed to make out the defense.  As the Board has noted in previous cases wherein such defense was asserted, "[t]here is nothing in the record to suggest that [opposer] has done anything other than seek to protect its rights in its registered marks, and preclude the registration of what it believes to be a confusingly similar mark, a right which every trademark owner possesses under the Lanham Act."  *Avia Group International Inc. v. Faraut*, 25 USPQ2d 1625, 1627 (TTAB 1992); *see also Cook's Pest Control, Inc. v. Sanitas Pest Control Corporation*, 197 USPQ 265, 268 (TTAB 1977); *see generally* J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition (4th Ed. 6/2001) at §§31:101-102.  This is especially so in view of our decision, see *infra*, sustaining opposer's Section 2(d) claim.

support of its case-in-chief, submitted the testimony

depositions (with exhibits) of its officers and/or

employees David Rupert, Michael Simons, Sean Callahan,

Jordan Sollitto and Denise D. Mayer, as well as the

testimony deposition of Jodi Arlen, a paralegal employed

by opposer's counsel.[5]  Opposer also submitted, by notice

of reliance, the discovery deposition of applicant Karen

L. Jones (with exhibits), printouts of numerous printed

publications obtained from electronic databases, and

status and title copies of nine of its pleaded

registrations.  The eight extant registrations are

summarized as follows:[6]

   **Registration No. 2,000,037**,[7] of the mark ROAD RUNNER

(in typed form), for

---

[5] Applicant's objection to opposer's testimony deposition
evidence will be discussed *infra*.

[6] The ninth registration of which opposer has submitted a status
and title copy is Registration  No. 950,384, which is of the
mark ROAD RUNNER (in typed form) for "comic books."  The
registration issued on January 9, 1973 from an application filed
November 3, 1971.  It appears from the status and title copy
submitted by opposer that the registration expired in 1993.  The
registration therefore is not evidence of anything except that
it issued.  *See* TBMP §703.02(a) and cases cited therein.

[7] Issued September 10, 1996 from an application filed October 26,
1995.  June 19, 1967 is alleged in the registration as the date
of first use and date of first use in commerce. Review of the
Office's automated records subsequent to opposer's submission of
a status and title copy of the registration during its testimony

printed matter and paper goods, namely books
and magazines featuring animation, comic
books, children's books, coloring books,
activity books; stationery, writing paper,
envelopes, notebooks, diaries, note cards,
greeting cards, trading cards, lithographs;
pens, pencils, cases therefor, erasers,
crayons, markers, colored pencils, painting
sets, chalk and chalkboard, decals, heat
transfers, posters; photographs; book covers,
book marks, calendars, gift wrapping paper;
paper party favors and paper party
decorations, namely paper doilies, crepe
paper, paper hats, invitations, paper table
cloths, paper cake decorations, printed
transfers for embroidery or fabric appliques,
printed patterns for costumes, pajamas,
sweatshirts and t-shirts";

**Registration No. 1,927,458**,[8] of the following mark



for "motion picture, video, and television films;

prerecorded audio-video tapes, cassettes and/or discs

featuring animation and/or music";

---

period (*see* TBMP §703.02(a)) reveals that §§8 & 15 affidavits
have been accepted and acknowledged.
[8] Issued October 17, 1995 from an application filed June 1,
1994.  April 1982 is alleged in the registration as the date of
first use and date of first use in commerce.  Review of the
Office's automated records subsequent to opposer's submission of
a status and title copy of the registration during its testimony
period reveals that §§8 & 15 affidavits have been accepted and
acknowledged.

Registration No. 1,288,072,[9] of the following mark



for "candy";

Registration No. 1,872,562,[10] of the following mark



for "clothing; namely, t-shirts and sweatshirts";

---

[9] Issued July 31, 1984 from an application filed October 1, 1982. July 1976 is alleged in the registration as the date of first use and date of first use in commerce. §§8 & 15 affidavits accepted and acknowledged.

[10] Issued January 10, 1995 from an application filed September 7, 1993. November 1, 1987 is alleged in the registration as the date of first use and date of first use in commerce. Review of the Office's automated records subsequent to opposer's submission of a status and title copy of the registration during its testimony period reveals that §§8 & 15 affidavits have been accepted and acknowledged.

Registration No. 1,915,162,[11] of the mark ROAD RUNNER (in typed form), for "toys; namely, plush dolls, and halloween costumes and masks";

Registration No. 1,946,471,[12] of the mark THE ROAD RUNNER & WILE E. COYOTE (in typed form), for "series of motion picture, video and television films; series of pre-recorded audio-video tapes, cassettes and/or discs featuring animation and/or music";

Registration No. 2,135,226,[13] of the mark ROAD RUNNER AND WILE E. COYOTE (in typed form), for "video game cartridges; video and computer game programs, cartridges, and cassettes"; and

Registration No. 1,950,585,[14] of the following mark

---

[11] Issued August 29, 1995, from an application filed October 26, 1993. January 16, 1989 is alleged in the registration as the date of first use and date of first use in commerce, and acquired distinctiveness is claimed pursuant to Section 2(f). Review of the Office's automated records subsequent to opposer's submission of a status and title copy of the registration during its testimony period reveals that §§8 & 15 affidavits have been accepted and acknowledged.

[12] Issued January 9, 1996 from an application filed August 4, 1994. August 12, 1992 is alleged in the registration as the date of first use and date of first use in commerce. Review of the Office's automated records subsequent to opposer's submission of a status and title copy of the registration during its testimony period reveals that §§8 & 15 affidavits have been accepted and acknowledged.

[13] Issued February 10, 1998 from an application filed January 31, 1996. November 1993 is alleged in the registration as the date of first use and date of first use in commerce.

[14] Issued January 23, 1996 from an application filed August 4, 1994. August 12, 1992 is alleged in the registration as the

8



for "motion picture, video, and television films; prerecorded audio-video tapes, cassettes and/or discs featuring animation and/or music."

Applicant, during her testimony period, made of record her testimony deposition (with exhibits), and, by notice of reliance, opposer's answers to applicant's interrogatories.[15]

In support of its rebuttal case, opposer submitted a notice of reliance on various printed publications and

---

date of first use and date of first use in commerce.  Review of the Office's automated records subsequent to opposer's submission of a status and title copy of the registration during its testimony period reveals that §§8 & 15 affidavits have been accepted and acknowledged.

[15] In its August 31, 2001 order, the Board (on opposer's contested motion) ordered stricken applicant's notice of reliance on documents produced during discovery by opposer in response to applicant's request for production of documents, as well as applicant's notice of reliance on a commercial search report.  In the same order, the Board also denied (on the ground of untimeliness) applicant's contested motion for leave to file an amended notice of reliance on printouts of third-party registrations obtained from the Office's automated database (offered by applicant as an amendment to or substitute for the stricken notice of reliance on the search report).

official records, as well as the rebuttal testimony
depositions (with exhibits) of Felice Perry and Jodi
Arlen, paralegals employed by opposer's counsel.

An evidentiary matter requires consideration prior
to our discussion of the merits of this case.  In
applicant's brief (at pp. 2-4), she "objects to all
deposition testimony offered by Time Warner, with the
exception of the [discovery] deposition testimony of
Karen Jones, for the reason that Time Warner refused to
identify to Applicant witnesses and documents in response
to Applicant's discovery requests."  In particular,
applicant cites to its "contention interrogatories" nos.
9-17, in which applicant requested opposer to "identify
each and every fact, document and witness in support of
your claim that…," followed by certain of the particular
allegations made by opposer in the notice of opposition.[16]

---

[16] Opposer's pleaded allegations, as identified in applicant's
Interrogatory Nos. 9-17 and at page 3 of applicant's brief, are:
that opposer's registrations "provide prima facie and conclusive
evidence of Opposer's ownership of the mark ROAD RUNNER and of
its exclusive right to use the mark in commerce" (Interrogatory
No. 9); that the word "maps" "does not serve to distinguish
Applicant's alleged mark from Opposer's well-known mark…"
(Interrogatory No. 10); that the design feature of applicant's
mark is "an imitation of Opposer's well-known ROAD RUNNER
character design mark and copyrighted cartoon character"
(Interrogatory No. 11); that "the mark which Applicant seeks to
register is identical to or so resembles Opposer's mark that its
use and registration is likely to cause confusion, mistake
and/or deception as to the source or origin of Applicant's goods
and will injure or damage Opposer" (Interrogatory No. 12); that

10

Opposer responded to these interrogatories by objecting on the grounds that they were vague, overbroad, unduly burdensome, oppressive, and that they were violative of attorney-client privilege, the work product doctrine, and confidentiality; opposer also stated that, although opposer "has not yet completed its investigation of the facts and circumstances surrounding the case," opposer would "provide any relevant documents that support its claims to the extent available pursuant to Fed. R. Civ. P. 33(d)." Applicant, in support of her objection, asserts that opposer identified no witnesses and provided no documents prior to trial, and argues that applicant therefore was deprived of the opportunity to conduct discovery or prepare for cross-examination as to the

---

"the goods of Applicant are so closely related to the goods and services of Opposer that the public is likely to be confused, to be deceived and to assume erroneously that Applicant's goods are the goods of Opposer or that Applicant is in some way connected with and/or sponsored by or affiliated with Opposer" (Interrogatory No. 13); that "Applicant's mark so closely resembles Opposer's name and mark that it is likely to cause deception in violation of Section 2(a) of the Trademark Act" (Interrogatory No. 14); that "Applicant's mark so closely resembles Opposer's marks that it falsely suggests a connection with Opposer in violation of Section 2(a) of the Trademark Act" (Interrogatory No. 15); that "Applicant's mark consists of matter which disparages Opposer and its related companies and which tends to bring Opposer and its related companies into contempt and disrepute in violation of Section 2(a) of the Trademark Act" (Interrogatory No. 16); and that "use and registration of the mark ROADRUNNER and Design by Applicant, alone or in combination with the word "Maps" will deprive Opposer of the ability to protect its reputation, persona and goodwill" (Interrogatory No. 17).

testimony and documents offered as trial evidence by opposer.

We overrule applicant's objections. It is settled that a party in a Board proceeding generally has no obligation to identify its fact witnesses or other trial evidence prior to trial. *See, e.g., British Seagull Ltd. v. Brunswick Corp.,* 28 USPQ2d 1197 (TTAB 1993), *aff'd, Brunswick Corp. v. British Seagull Ltd.*, 35 F.3d 1527, 32 USPQ2d 1120 (Fed. Cir. 1994); *Charrette Corp. v. Bowater Communication Papers Inc.*, 13 USPQ2d 2040 (TTAB 1989); TBMP §419(7). We find applicant's interrogatory requests that opposer "identify each and every fact, document and witness in support of its pleaded allegations" to be equivalent to a request for identification of fact witnesses and trial evidence prior to trial, and therefore improper.

Moreover, we disagree with applicant's contention that she was deprived of the opportunity for discovery or that opposer has engaged in "trial by ambush." We note that, despite her apparent dissatisfaction with opposer's interrogatory responses, applicant never filed a motion to compel further responses from opposer; applicant will not now be heard to complain that opposer's discovery

responses were inadequate. *See* TBMP §523.04 and cases cited therein. Nor did applicant avail herself of the opportunity to notice and take discovery depositions under Fed. R. Civ. P. 30(b)(6) of persons with knowledge of relevant facts. In these circumstances, applicant's claim that she was deprived of the opportunity to obtain discovery regarding opposer's case prior to trial is not persuasive.

Finally, even if applicant's interrogatories had been proper and opposer's responses thereto might be deemed to be inadequate or evasive, we find that applicant waived any objection to the testimony depositions and exhibits on that ground. Applicant did not formally or clearly raise her objection to opposer's testimony deposition evidence until she filed her brief on the case. Applicant did not object to opposer's notices of testimony depositions of its trial witnesses on the ground that the witnesses were not identified during discovery, or on any other ground. The Board's review of the testimony deposition transcripts themselves reveals that applicant made only vague objections on the record during three of the depositions,[17] and made no

---

[17] During the second session of the testimony deposition of Jodi Arlen (conducted on November 14, 2000), applicant's counsel, on cross-examination, elicited testimony from Ms. Arlen that

13

objection at all (as to this ground of objection) during the other five depositions.

In summary, we deem applicant to have waived her objection to opposer's testimony depositions and attached exhibits, and we deem that evidence to be properly of record.

We turn now to the merits of opposer's claims. Initially, we find that opposer has established its standing to bring this proceeding. Opposer has presented evidence of its ownership of its various ROAD RUNNER registrations and of its use of its ROAD RUNNER marks on a variety of goods, as well as evidence sufficient to show that its likelihood of confusion claim is not wholly without merit. In view thereof, we find that opposer has

---

opposer's Exhibit Nos. 65-72 are materials she obtained from an Internet search performed on November 9, 2000, and that they were not provided to applicant's counsel prior to the deposition. At page 16 of the deposition, applicant's counsel states: "Other than to object to any newly produced documents, I have no further questions of this witness." During the rebuttal testimony deposition of Felice Perry, at which opposer's Exhibit Nos. 73-77 were made of record, applicant's counsel stated: "Again, I'm reserving all objections to exhibits for trial." (Perry deposition, at 7.) Finally, during the rebuttal testimony deposition of Jodi Arlen, at which opposer's Exhibit Nos. 78-88 were made of record, applicant's counsel, at page 21, stated: "I think I'm entitled to reserve my objection for the trial, and I will do so." To the extent that applicant's counsel, in referring to "the trial," is referring to the final briefing of the case, he is incorrect. In Board proceedings, the "trial" takes place during the testimony periods assigned by the Board, and objections to testimony and/or exhibits thereto generally must be made at trial and renewed in a party's brief. *See* TBMP §§701 and 718.04.

established that it has a real interest in the outcome of this proceeding and that it has a reasonable basis for its belief that it would be damaged by registration of applicant's mark. Accordingly, we find that opposer has standing to bring this opposition. *See* Trademark Act Section 13, 15 U.S.C. §1063; *Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023 (Fed. Cir. 1999).

We sustain the opposition as to opposer's Section 2(d) ground of opposition. We find that Section 2(d) priority is not an issue in this case, in view of opposer's submission of status and title copies of its pleaded registrations. *See King Candy Co., Inc. v. Eunice King's Kitchen, Inc.*, 496 F.2d 1400, 182 USPQ 108 (CCPA 1974). We also find that applicant's mark, as applied to applicant's goods, so resembles the marks depicted in opposer's Registration Nos. 2,000,037 and 1,927,458 as to be likely to cause confusion, to cause mistake, or to deceive.[18] As noted above, Registration No.

---

[18] We find that opposer has failed to prove that any of its other seven pleaded registrations is a Section 2(d) bar to registration of applicant's mark, and our decision on opposer's Section 2(d) claim accordingly is not based on those registrations. Those registrations do not preclude registration of applicant's mark under Section 2(d) because they involve marks (with their references to or depictions of Wile E. Coyote) and/or goods (candy, clothing, toys) which are too dissimilar to applicant's mark and goods to be likely to cause confusion. Likewise, we do not base our Section 2(d) decision on any alleged common law rights opposer claims in the Road Runner

2,000,037 is of the mark ROAD RUNNER (in typed form) for various items of printed matter and paper goods, including comic books, children's books, coloring books, activity books, and stationery.  Registration No. 1,927,458 is of the following mark



for "motion picture, video, and television films; prerecorded audio-video tapes, cassettes and/or discs featuring animation and/or music."

Our likelihood of confusion determination under Section 2(d) is based on an analysis of all of the probative facts in evidence that are relevant to the

---

designation.  In particular, any use by opposer of its Road Runner character on maps or in connection with online mapping services was subsequent to applicant's proven first use of her mark in 1988, and such use by opposer therefore cannot serve as the basis of its Section 2(d) claim in this case.  However, we have considered opposer's other registrations and its common law rights insofar as they are relevant to our likelihood of confusion determination as between applicant's mark, as applied to applicant's goods, and the marks and goods involved in opposer's Registration Nos. 2,000,037 and 1,927,458, e.g., to the extent that they demonstrate the fame of opposer's mark, or the relationship between the parties' respective goods.  See discussion *infra*.

likelihood of confusion factors set forth in *In re E. I. du Pont de Nemours and Co.,* 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). In considering the evidence of record on these factors, we keep in mind that "[t]he fundamental inquiry mandated by §2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks." *Federated Foods, Inc. v. Fort Howard Paper Co.,* 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976).

We note as well that "[t]he fifth *du Pont* factor, fame of the prior mark, plays a dominant role in cases featuring a famous or strong mark." *Kenner Parker Toys, Inc. v. Rose Art Industries, Inc.*, 963 F.2d 350, 22 USPQ2d 1453, 1456 (Fed. Cir. 1992); see also *Bose Corp. v. QSC Audio Products Inc.*, No. 01-1216 (Fed. Cir. June 14, 2002); *Recot, Inc. v. M.C. Becton*, 214 F.3d 1322, 54 USPQ2d 1894 (Fed. Cir. 2000). In view thereof, we shall consider the fifth *du Pont* factor first.

Opposer's Road Runner is one of opposer's cast of "Looney Tunes" cartoon characters. (Rupert depo. at 24.) Other Looney Tunes characters include Wile E. Coyote, Bugs Bunny, Daffy Duck, Tasmanian Devil, Tweety,

Sylvester and Yosemite Sam, among others. (Opposer's Exhibit Nos. 3, 5, 17, 21, 51-52, 54, and 57.)

The Road Runner cartoon character was created in 1949 by the noted animator Chuck Jones, an employee of Warner Bros., opposer's predecessor-in-interest. (Mayer depo. at 8.) That year, the character made its first public appearance in a theatrically-released cartoon short feature, and it appeared in a series of additional theatrical short features through the 1960's. (Mayer depo. at 8-11; Opposer's Exhibit Nos. 45, 47.) The Road Runner character also appeared in a 1960's television series on CBS called The Road Runner Show, and was featured as well on the Bugs Bunny Show and, later, the Bugs Bunny-Road Runner Hour. (Mayer depo. at 8-11; Opposer's Exhibit No. 46.) Approximately forty Road Runner cartoons were produced by Warner Bros. during the character's "classic" period. (Mayer depo. at 13.) In the 1990's, the cartoons were re-released as a series of videos and laser discs. (Mayer depo. at 23; Opposer's Exhibit Nos. 58-59.) The Road Runner character had its own comic book series beginning in the late 1950's, parts of which were reprinted in the 1970's. (Mayer depo. at 10, 15-16.) In the 1960's, the Road Runner name and

character were used in marketing an automobile called the Plymouth Road Runner. (Sollitto depo. at 12.)

The popularity of the Road Runner cartoon character created a demand for Road Runner merchandise, and opposer and its predecessors have licensed the character for use on a wide variety of products over the years, including apparel, accessories, automotive products, collectibles, domestics, gift and novelty items, housewares, personal care items, stationery and paper goods, sporting goods, toys and games. (Rupert depo., at 16-17.). Approximately $500 million worth of Looney Tunes licensed merchandise is sold at retail every year; in 1999, sales of such merchandise totaled approximately $800 million at retail. (*Id*. at 23-24.) These sales figures do not include sales of such products at opposer's own Warner Bros. Studio Stores. (*Id*. at 41.) Because many of these licensed products include more than one of the Looney Tunes characters, opposer does not break down separate sales figures for each of the characters, such as the Road Runner. (*Id*. at 24-25.) However, in the three years prior to October 2000, opposer received over 700 requests from potential licensees seeking licenses to use the Road Runner character on various products. (*Id*. at 25-26.)

Opposer also receives thirty to forty requests every year from companies wishing to use the Road Runner character in promoting and advertising their own goods and services; of the Looney Tunes characters, only Bugs Bunny garners a greater number of such requests. (Sollitto depo. at 13.)  Such licensed promotional uses of the Road Runner character have included the character's appearance in a series of commercials for the Pontiac Grand Prix automobile, in a U.S. West Cellular promotional campaign, and in a Pepsi commercial (with the professional athlete Deion Sanders) that aired during the Super Bowl.  (*Id*. at 9-10, 12.)  The Road Runner character also has appeared together with other of the Looney Tunes characters in third-party promotions and advertisements (Sollitto depo. at 8-9, 11), although the prominence in those promotions of the Road Runner, per se, is not apparent from the record.  The Road Runner and Wile E. Coyote, along with the other Looney Tunes characters, have been featured in a series of stamps and other products offered for sale by the U.S. Postal Service.  (Rupert depo. at 46-50; Opposer's Exhibit Nos. 9-12.)  Time Warner Cable, an affiliated company of opposer's, uses the Road Runner name and character in connection with the provision of a broadband Internet

service which is available to and advertised to twenty percent of American households.  (Callahan depo. at 5-6.)

Opposer presented no specific evidence of the dollar amounts expended on advertising its licensed Road Runner products.  It appears that opposer's licensees conduct and pay for the advertising of licensed products, although opposer retains and exercises creative control over the content of the advertisements and the manner in which the Road Runner name and character are used therein.  (Rupert depo. at 27-29.)

We find that this evidence suffices to establish that opposer's ROAD RUNNER mark is a famous mark, for purposes of the fifth *du Pont* likelihood of confusion factor.  Although there is no direct evidence as to the amounts of opposer's sales and advertising pertaining solely to the Road Runner, opposer's indirect evidence of fame, including but not limited to the length of time in which the mark has been in use, the large number of requests for licenses of the mark, and the nationwide advertising exposure of the mark, persuades us that the mark is famous under the fifth *du Pont* factor.[19]  *See Bose*

---

[19] In making our finding that opposer's mark is famous under the fifth *du Pont* factor, we have given no probative weight to the "survey" evidence opposer submitted as Exhibit No. 14 to the Rupert deposition.  This exhibit consists of several years' worth of annually-produced documents entitled "The Appeal Of

*Corp. v. QSC Audio Products Inc., supra.* In our likelihood of confusion analysis, that fame weighs heavily in opposer's favor. *See Recot, Inc. v. M.C. Becton, supra, and Kenner Parker Toys, supra.*

We likewise find that the sixth *du Pont* factor, i.e., the number and nature of similar marks in use on similar goods, weighs in opposer's favor. There is no evidence of third-party use of ROADRUNNER marks on similar goods.[20] We conclude therefrom that opposer's mark is strong, as well as famous.

---

Looney Tunes Characters," all of which state that they are "Based on A National Survey Conducted by C.A. Walker & Associates, Inc." Mr. Rupert testified that opposer uses these documents to demonstrate the popularity of the Looney Tunes characters, including the Road Runner, to potential licensees. (Rupert depo. at 51-52, 62-63.) Applicant did not object to this exhibit during trial, although she has raised an objection to the exhibit at footnote 4 to her brief on the case. Even assuming that the exhibit is properly of record, however, we find that it lacks probative value. To the extent that opposer is offering this exhibit as survey evidence, we find that any probative value it might have is negated by the absence of any evidence as to the methodology and size of the universe underlying the survey. To the extent that opposer is offering these documents under the business records exception to the hearsay rule, we likewise find that they have no probative value. Essentially, these documents are not "business records," but rather are merely advertising materials opposer uses in its attempt to persuade potential licensees to take licenses of its marks. These advertising materials are not persuasive evidence of the truth of the underlying statements contained therein (regarding the popularity of the Looney Tunes characters).

[20] Applicant's proffered evidence of third-party registrations of ROAD RUNNER marks has been disallowed. See *supra* at footnote 15. In any event, third-party registrations are not evidence that the marks used therein are in use in commerce or that the public is familiar with them, for purposes of the sixth *du Pont*

Next, we turn to a determination, under the first *du Pont* factor, of whether applicant's mark and opposer's registered marks, when compared in their entireties in terms of appearance, sound and connotation, are similar or dissimilar in their overall commercial impressions. The test is not whether the marks can be distinguished when subjected to a side-by-side comparison, but rather whether the marks are sufficiently similar in terms of their overall commercial impression that confusion as to the source of the goods offered under the respective marks is likely to result.  The focus is on the recollection of the average purchaser, who normally retains a general rather than a specific impression of trademarks.  *See Sealed Air Corp. v. Scott Paper Co.,* 190 USPQ 106 (TTAB 1975).  Furthermore, although the marks at issue must be considered in their entireties, it is well-settled that one feature of a mark may be more significant than another, and it is not improper to give more weight to this dominant feature in determining the commercial impression created by the mark.  *See In re National Data Corp.,* 753 F.2d 1056, 224 USPQ 749 (Fed. Cir. 1985).

---

factor.  *See Olde Tyme Foods Inc. v. Roundy's Inc.*, 961 F.2d 200, 22 USPQ2d 1542 (Fed. Cir. 1992).

Applying these principles to the facts of this case, we find that applicant's mark is similar, rather than dissimilar, to the marks depicted in opposer's Registration  Nos. 2,000,037 and 1,927,458.  Both applicant's mark and opposer's marks consist, in dominant part, of the arbitrary term ROAD RUNNER or its legal equivalent, ROADRUNNER, and/or a fanciful cartoon depiction of a roadrunner bird.  In terms of the marks' overall commercial impressions, these basic similarities outweigh any specific dissimilarities that might be apparent upon side-by-side comparison of the marks, whether those dissimilarities are considered alone or in combination.

Specifically, it is of little legal consequence that opposer uses the two-word formulation ROAD RUNNER, while applicant uses the single word ROADRUNNER; the two formulations sound the same, mean the same thing, and look essentially the same.  Likewise, the presence in applicant's mark of the generic, disclaimed word MAPS does not distinguish the marks.  Although we do not disregard the word MAPS, we find that it is entitled to less weight in our comparison of the marks.  *See In re National Data, supra.*  Purchasers are likely to view that word as identifying the goods themselves, rather than in

24

any trademark sense as a means of distinguishing between different sources of ROADRUNNER (or ROAD RUNNER) products.

Finally, the differences in the details of the parties' respective cartoon depictions of a roadrunner bird do not suffice to distinguish the marks in terms of their overall commercial impressions. Regardless of the differences which might be apparent in a side-by-side comparison, both marks depict a cartoon roadrunner bird. When used as a trademark, the depiction of a cartoon roadrunner bird is no less arbitrary than the words ROAD RUNNER or ROADRUNNER are. The fact that applicant's cartoon roadrunner may not be identical to opposer's cartoon roadrunner in all details is less significant to our analysis than the basic similarity arising from the fact that both marks include a cartoon depiction of a roadrunner.

In *B.V.D. Licensing Corp. v. Body Action Design, Inc.*, 846 F.2d 727, 6 USPQ2d 1719, 1721 (Fed. Cir. 1988), the court stated that "the fame of a mark cuts both ways with respect to the likelihood of confusion. The better known it is, the more readily the public becomes aware of even a small difference." Citing this statement, applicant argues that the very fame of opposer's mark and

25

the resulting purchaser familiarity with that mark will prevent purchaser confusion as to the source of goods bearing applicant's mark. (Applicant's brief at 14.) Applicant also argues that given the close control opposer exercises over the way its licensees depict its Road Runner character in order to ensure its purity and uniformity of presentation, and because the roadrunner depicted in applicant's mark does not comply with opposer's artistic standards and therefore would not be approved by opposer for use on opposer's licensed products, purchasers will not assume that applicant's mark is one of opposer's marks, or that applicant's use of her mark is authorized by opposer. (Applicant's brief at 23.)

We are not persuaded by these arguments. First, we note that the language from the *B.V.D. Licensing Corp.* case quoted above and relied on by applicant, to the effect that the fame of a mark might serve to diminish the likelihood of confusion, is not controlling precedent. "The holding of *B.V.D.*, to the extent it treats fame as a liability [to the owner of the famous mark asserting likelihood of confusion], is confined to the facts of that case." *Kenner Parker Toys Inc., supra*, 22 USPQ2d at 1457. Thus, the fame of opposer's Road

Runner mark, and the familiarity of purchasers with the details of that mark, do not weigh in applicant's favor in our likelihood of confusion analysis. Rather, as discussed above, the fame of opposer's mark necessarily weighs heavily in opposer's favor in this case.

As for applicant's second argument, there is no evidence that purchasers are aware that opposer enforces strict standards as to the manner in which its Road Runner character is depicted on or in connection with licensed products. Thus, we have no basis for concluding that purchasers would be aware that applicant's mark does not comply with opposer's artistic standards, nor for concluding that purchasers would presume, from such noncompliance, that opposer has no connection to the goods sold under applicant's mark. Regardless of the presence or absence of such evidence, however, we would reject applicant's argument because it is merely a variation on the "fame as a liability" proposition rejected by the court in *Kenner Parker Toys.* Purchasers' familiarity with licensed representations of opposer's mark cannot weigh against opposer in our likelihood of confusion analysis.

In sum, we find that applicant's mark and opposer's registered marks (in Registration Nos. 2,000,037 and

27

1,927,458) look and sound similar, have similar connotations, and create the same general overall commercial impression, and that the first *du Pont* factor accordingly weighs in favor of a finding of likelihood of confusion in this case.

We turn next to the second *du Pont* factor, i.e., the similarity or dissimilarity of the parties' respective goods. It is not necessary that these respective goods be identical or even competitive in order to support a finding of likelihood of confusion. Rather, it is sufficient that the goods are related in some manner, or that the circumstances surrounding their marketing are such, that they would be likely to be encountered by the same persons in situations that would give rise, because of the marks used thereon, to a mistaken belief that they originate from or are in some way associated with the same source or that there is an association or connection between the sources of the respective goods. *See In re Martin's Famous Pastry Shoppe, Inc*., 748 F.2d 1565, 223 USPQ 1289 (Fed. Cir. 1984); *In re Melville Corp.,* 18 USPQ2d 1386 (TTAB 1991); *In re International Telephone & Telegraph Corp.*, 197 USPQ2d 910 (TTAB 1978). Moreover, the greater the degree of similarity between the applicant's mark and the cited registered mark, the

28

lesser the degree of similarity between the applicant's goods or services and the registrant's goods or services that is required to support a finding of likelihood of confusion. *See In re Shell Oil Co.*, 992 F.2d 1204, 26 USPQ2d 1687 (Fed. Cir. 1993); *In re Concordia International Forwarding Corp.,* 222 USPQ 355 (TTAB 1983).

Applicant's goods are identified in the application as "road maps." We must presume that applicant's goods include all types of road maps, and not just the types of road maps applicant actually markets under the mark at this time. *See Canadian Imperial Bank of Commerce v. Wells Fargo Bank, N.A.,* 811 F.2d 1490, 1 USPQ2d 1813 (Fed. Cir. 1987); *Paula Payne Products Co. v. Johnson Publishing Co.,* 473 FF.2d 901, 177 USPQ 76 (CCPA 1973); *In re Opus One Inc.*, 60 USPQ2d 1812 (TTAB 2001); *In re Bercut-Vandervoort & Co.*, 229 USPQ 763 (TTAB 1986).

The identification of goods in opposer's Registration No. 2,000,037, of the mark ROAD RUNNER in typed form, includes "children's books, coloring books, [and] activity books." Opposer has presented evidence which shows that a third party, Rand McNally, sells both maps and children's activity books under the same mark,

i.e., "Rand McNally." See opposer's Exhibit No. 73.[21]
This is probative evidence that purchasers are likely to
assume a source connection between road maps and
children's activity books which are sold under the same
or similar marks. *Cf. Recot, Inc., supra; In re Albert
Trostel & Sons Co.,* 29 USPQ2d 1783; *In re Mucky Duck
Mustard Co., Inc.,* 6 USPQ2d 1467 (TTAB 1988).
Additionally, it appears from the back cover of Exhibit
No. 73 that that one of the children's activity books
offered for sale under the "Rand-McNally" mark is
entitled "Kids' U.S. Road Atlas," a fact which further
supports a finding that a source relationship exists
between road maps and children's books. For these
reasons, we find that, for purposes of the second *du Pont*
factor, applicant's goods are related to certain of the
goods identified in opposer's Registration No. 2,000,037.

We also find that applicant's "road maps" are
related to the goods identified in opposer's Registration
No. 1,927,458, i.e., "motion picture, video, and

---

[21] Opposer did not submit any actual maps bearing the Rand
McNally mark, nor any registrations owned by Rand McNally which
cover maps. However, opposer's Exhibit 73 (a children's
activity book) was purchased at the "Rand McNally Map & Travel
Store," according to the price sticker appearing thereon; it is
reasonable to infer therefrom that Rand McNally also sells maps
bearing the Rand McNally mark. Applicant concedes as much when,
in discussing this evidence in her brief, she refers to "map
maker Rand McNally." (Applicant's brief, at 26.)

television films; prerecorded audio-video tapes, cassettes and/or discs featuring animation and/or music," because road maps are within opposer's natural area of expansion. *See generally Mason Engineering & Designing Corp. v. Mateson Chemical Corp.*, 225 USPQ 956 (TTAB 1985). The goods identified in opposer's Registration No. 1,927,458 obviously feature and/or are based upon opposer's famous Road Runner character. The evidence shows that opposer has licensed that character for use on a wide variety of goods, including automotive items such as automobile floor mats, automobile spare tire covers, automobile license plates and license plate holders (see opposer's Exhibit Nos. 5 and 24), and office stationery items (such as the office phone message book made of record as opposer's Exhibit No. 81) which would be purchased by the same businesspersons who, applicant contends, would purchase applicant's road maps. We also note that opposer apparently has already licensed its Bugs Bunny character mark to VanDam, Inc. for use on a New York City street map. See opposer's Exhibit No. 23.[22]

---

[22] Applicant's argument that this map is "little more than a tourists [sic] brochure for Manhattan" is unpersuasive. The map is not a mere brochure, but rather is a detailed street map which, according to the price printed thereon, retails for seven dollars.

We conclude from this evidence that road maps are within the natural area of expansion of products for which opposer might license use of its Looney Tunes marks, including the Road Runner. There is no evidence in the record which suggests that opposer would not or could not license the Road Runner mark for use on maps. In view thereof, we find that purchasers encountering a road map bearing applicant's confusingly similar road runner mark are likely to assume that opposer has licensed or approved use of such mark.

For the reasons discussed above, we find that applicant's goods are sufficiently related to opposer's goods, under the second *du Pont* factor, that confusion is likely to result from the use of the parties' similar marks thereupon. This is especially so in view of the fame of opposer's mark. *See Recot, Inc., supra.*

As for the third *du Pont* factor, we find that applicant's goods and opposer's goods move in the same trade channels. There are no limitations in either applicant's or opposer's respective identifications of goods, so we must presume that the goods travel in all trade channels normal for such goods. *See Canadian Imperial Bank of Commerce, supra.* Furthermore, it is clear from the testimony of applicant and of opposer's

32

witnesses that the parties' respective goods are marketed in the same trade channels and by some of the same retail chains, e.g., CostCo, Office Depot, and Barnes & Noble. For these reasons, we find that the third *du Pont* factor weighs in opposer's favor in this case.

Under the fourth *du Pont* factor (the conditions under which and buyers to whom sales are made), we find that applicant's goods and opposer's goods are marketed to the same classes of customers. Again, no restrictions as to customers are set forth in the respective identifications of goods, and applicant's attempts to limit the purchasers of its maps to professionals and business people accordingly is unavailing. As identified in the application and the registrations, the parties' respective goods are general consumer items which typically are purchased without a great degree of care or sophisticated thought. For these reasons, we find that the fourth *du Pont* factor weighs in opposer's favor in this case.

There is no evidence of actual confusion between opposer's and applicant's marks, under the seventh *du Pont* factor. However, evidence of actual confusion is notoriously difficult to come by and, in any event, such evidence is not required in order to establish likelihood

of confusion. See *Gillette Canada Inc. v. Ranir Corp.,* 23 USPQ2d 1768, 1774 (TTAB 1992); *Block Drug v. Den-Mat Inc.,* 17 USPQ2d 1315, 1318 (TTAB 1989); and *Guardian Products Co. Inc. v. Scott Paper Co.,* 200 USPQ 738, 743 (TTAB 1978).

Additionally, the absence of evidence of actual confusion in this case is offset, under the eighth *du Pont* factor, by the absence of sufficient evidence upon which we might base a conclusion that there has been any meaningful opportunity for actual confusion to have occurred. It is true that the parties have used their respective marks concurrently for over thirteen years, and that, for an indeterminate period of time, they have marketed their products through some of the same trade channels and retail chains, i.e., CostCo, Office Depot, and Barnes & Noble. However, we cannot conclude that applicant's sales and advertising of her maps have been so substantial that the absence of actual confusion is surprising or legally significant.[23] See *Gillette Canada*

---

[23] At page 12 of her brief, applicant contends that she sold more than $1 million worth of maps between 1995 and 1999. However, the testimony and evidence cited by applicant for this proposition (Jones Dep I at 188, Exh. 14, and Jones Dep II at 86, Exhibit 123) fails to bear it out. The evidence and testimony is vague as to the amount of total sales. Additionally, the figures recited appear to include applicant's sales of third-party maps as well as of her own trademarked

*Inc. v. Ranir Corp., supra.* In sum, we find on this record that the seventh and eighth *du Pont* factors, which pertain to actual confusion, essentially are neutral in this case.

We find that the ninth *du Pont* factor (the variety of goods on which a mark is used) weighs in opposer's favor. The evidence establishes that opposer has licensed its Road Runner marks for use on a large number of diverse products.

The only remaining likelihood of confusion factor to discuss is applicant's intent in adopting her mark.[24] Opposer argues that applicant adopted her mark with knowledge of opposer's prior rights and, therefore, in bad faith. After careful review of the evidence of record, we conclude that this allegation is unfounded. Applicant's mere prior knowledge of opposer's Road Runner character does not establish that applicant adopted her mark in bad faith. *See Sweats Fashions Inc. v. Pannill*

---

maps. We cannot determine with certainty the amount of applicant's sales of her own maps and, in any event, we cannot conclude that applicant's maps have been distributed and advertised in such numbers that the absence of actual confusion is legally significant in this case.

[24] The defendant's intent is not among the specifically listed *du Pont* evidentiary factors, but evidence with respect thereto can be relevant under the catch-all thirteenth *du Pont* factor.

*Knitting Co. Inc.*, 833 F.2d 1560, 4 USPQ2d 1793, 1798 (Fed. Cir. 1987). Applicant has provided a plausible explanation as to why she adopted her mark, i.e., because of her ex-husband's prior "Roadrunner Produce" business and because of the aptness of the roadrunner as a mark for road maps. Opposer has presented no probative evidence which contradicts applicant's explanation or which otherwise proves that applicant adopted her mark in bad faith. Accordingly, we find that this factor does not weigh in opposer's favor in this case.[25]

After careful consideration of the evidence of record pertaining to all of the relevant *du Pont* factors, we find that a likelihood of confusion exists as between applicant's mark and opposer's registered marks in Registration Nos. 2,000,037 and 1,927,458. Applicant's mark and opposer's marks are sufficiently similar, and applicant's goods and opposer's goods are sufficiently related, that the parties' use of their respective marks on their respective goods is likely to cause confusion.

---

[25] By the same token, however, the fact that applicant apparently adopted her mark in good faith does not weigh in applicant's favor in our likelihood of confusion analysis. Lack of intent to trade on or copy another's mark will not prevent a finding of likelihood of confusion if a likelihood of confusion otherwise exists. *See J & J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 18 USPQ 1889, 1891 (Fed. Cir. 1991); *Greyhound Corp. v. Both Worlds Inc.*, 6 USPQ2d 1635, 1640 (TTAB 1988).

Moreover, opposer's mark is a famous mark which is entitled to a broad scope of protection under *Kenner Parker Toys* and *Recot, Inc., supra.* Any doubts as to whether a likelihood of confusion exists (we have none) must be resolved against applicant and in favor of opposer. *See In re Hyper Shoppes (Ohio) Inc.,* 837 F.2d 840, 6 USPQ2d 1025 (Fed. Cir. 1988); *In re Martin's Famous Pastry Shoppe, Inc.*, *supra*.

Therefore, we sustain opposer's Section 2(d) ground of opposition.

However, opposer's Section 2(a) "false suggestion of a connection" ground of opposition fails for lack of proof. Opposer has not presented evidence sufficient to establish the first element of that ground of opposition, i.e., that applicant's ROADRUNNER MAPS and design mark is the same as or a close approximation of opposer's name or identity. *See Buffett v. Chi-Chi's, Inc.*, 226 USPQ 428, 429 (TTAB 1985). Opposer owns ROAD RUNNER trademarks, but neither applicant's ROADRUNNER MAPS and design mark, nor even opposer's ROAD RUNNER mark or cartoon character, constitutes opposer's name or identity.[26] Opposer's Section 2(a) claim accordingly is

---

[26] In this respect, opposer's very pleading of this ground of opposition is insufficient to state a claim. In paragraph 16 of

dismissed.

**Decision**:  Opposer's Section 2(a) ground of opposition  is dismissed.  Opposer's Section 2(d) ground of opposition is sustained.  Registration to applicant is refused.

---

the notice of opposition, opposer alleges that "Applicant's mark so closely resembles Opposer's <u>marks</u> that it falsely suggests a connection with Opposer in violation of Section 2(a) of the Trademark Act."  (Emphasis added.)  The issue under Section 2(a) is not whether applicant's mark resembles opposer's marks, but whether applicant's mark is the same as or a close approximation of opposer's name or identity.