This Decision is a
Precedent of the TTAB

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA  22313-1451**

Baxley

Mailed:  May 13, 2013

Cancellation No. 92054201

Dan Foam ApS

v.

Sleep Innovations, Inc.

Before Holtzman, Bergsman, and Shaw,
Administrative Trademark Judges.

By the Board:

Sleep Innovations, Inc. ("respondent") owns a registration for the mark BODIPEDIC and design in the following form, bodipedic, for "[m]attress toppers, pillows, [and] mattresses" in International Class 20.[1]

---

[1] Registration No. 3916902, issued February 8, 2011, based on an application filed June 24, 2010, and alleging April 2, 2008, as the date of first use anywhere and date of first use in commerce. "Color is not claimed as a feature of the mark. The mark consists of the word "BODIPEDIC" with a stylized silhouette of a person which is above the letters 'IPED'."  The registration includes a claim of ownership of Registration No. 3137309.
  Registration No. 3137309 is for the mark BODIPEDIC in standard character form for "[m]attress toppers, pillows, chairs and chair cushions" in International Class 20.  Section 8 affidavit accepted, Section 15 affidavit acknowledged.  Registration Nos. 3137309 and 3916902 both include "[m]attress toppers, [and] pillows" in the identification of goods; however, Registration No. 3137309 includes "chairs and chair cushions," whereas Registration No. 3916902 includes "mattresses," in the identification of goods.

Dan Foam ApS ("petitioner") seeks to cancel respondent's registration on the ground of likelihood of confusion with its registered and previously used mark +TEMPUR-PEDIC and design in the following form,

, for "[s]eating and couching mats in the nature of a pillow or seat liner, pillows, cushions, mattresses, top mattresses, bolsters and chair pads for medical uses" in International Class 10 and "[s]eating and couching mats in the nature of a pillow or seat liner, pillows, cushions, mattresses, top mattresses, bolsters and chair pads" in International Class 20.[2] Respondent, in its answer, denies the salient allegations of the petition to cancel.[3]

This case now comes up for consideration of: (1) petitioner's motion (filed August 2, 2012, after the due

---

[2] Registration No. 3900919, issued January 4, 2011, based on an application filed May 14, 2007, and alleging May 31, 2007, as the date of first use anywhere and date of first in commerce. "Color is not claimed as a feature of the mark. The mark consists of a female figure on a pillow reclining on top of a cross and the words "TEMPUR-PEDIC." The portion of the mark comprised of a cross design is not displayed in the color red or a colorable imitation thereof; and is not used and will not be used in the color red or a colorable imitation thereof."

[3] Respondent did not plead as an affirmative defense that petitioner cannot be damaged by registration because respondent already owns another registration for the same (or substantially similar) mark and goods or services, which has not been challenged, based on its Registration No. 3137309. *See Morehouse Mfg. Corp. v. J. Strickland & Co.*, 407 F.2d 881, 160 USPQ 715 (CCPA 1969).

date for petitioner's pretrial disclosures) for summary judgment; and (2) respondent's cross-motion (filed September 17, 2012) for summary judgment. The motions have been fully briefed.

## PRELIMINARY MATTERS

Before turning to the cross-motions for summary judgment, the Board addresses two preliminary matters. The first is respondent's contention in its combined brief in response to petitioner's motion for summary judgment and in support of its cross-motion for summary judgment that, pursuant to Fed. R. Civ. P. 45(b)(1), petitioner should be barred from relying upon evidence of actual confusion obtained from Overstock.com, LLC ("Overstock.com") by subpoena *duces tecum* that it submitted in support of petitioner's motion for summary judgment. The second is whether or not such evidence is admissible.

### 1. Respondent's request to exclude evidence.

In particular, respondent contends that, on February 2, 2012, petitioner's attorney served a subpoena *duces tecum* on Overstock.com seeking production of "documents, electronically stored information or objects" without providing prior notice of such service to respondent; that, on February 10, 2012, Overstock.com produced documents responsive to the subpoena; that respondent only became

aware of the Overstock.com subpoena on February 14, 2012, when petitioner's attorney sent to respondent's attorney the produced documents and a copy of the subpoena; that, instead of taking a discovery deposition of a representative of Overstock.com to authenticate the documents, petitioner, on February 23, 2012, separately obtained a declaration from Krysta Pecharich, the Overstock.com employee to whom the Overstock.com subpoena was directed, which it then submitted as an exhibit in support of the motion for summary judgment for the purpose of authenticating the documents produced pursuant to the subpoena; and that respondent was unaware of such declaration until petitioner relied upon it as an exhibit to its motion for summary judgment. Respondent contends that petitioner failed to comply with Fed. R. Civ. P. 45(b)(1) when it failed to serve notice of the Overstock.com subpoena upon respondent prior to the service of that subpoena upon Overstock.com. In view of petitioner's asserted failure to comply with Rule 45, respondent contends that petitioner should be precluded from relying upon documents produced pursuant to the Overstock.com subpoena.

In response, petitioner contends that respondent waived any right to object to petitioner's "oversight" in

serving the subpoena on respondent until twelve days after its issuance because it failed to raise any objection in the form of a motion to exclude, a motion to quash the subpoena at issue, or a motion for sanctions prior to the June 10, 2012, close of the discovery period;[4] that respondent "was not prejudiced by the *de minimus* (sic) delay" in petitioner's service of the Overstock.com subpoena; and that petitioner had no obligation to produce the declaration of Ms. Pecharich during discovery.

In reply, respondent contends that, because the Board does not prospectively exclude evidence, respondent properly objected to the documents produced pursuant to the subpoena for Overstock.com when it opposed petitioner's motion for summary judgment; and that respondent lacked standing to file a motion to quash the Overstock.com subpoena.

---

[4] We are mystified by petitioner's contention that respondent cannot contest petitioner's reliance on the documents because respondent did not file a motion to quash the subpoena. Respondent alleges, and petitioner does not dispute, that the subpoena was not immediately served on respondent, and that respondent was therefore not aware of the Overstock.com subpoena until after Overstock.com had complied therewith. As such, respondent could not move to quash a subpoena which it had no reason to believe existed. We also note that the Board cannot modify or quash a subpoena issued by a district court. *See, e.g., Luehrmann v. Kwik Kopy Corp.*, 2 USPQ2d 1303, 1304 n.3 (TTAB 1987); TBMP Section 404.03(a).

Federal Rule of Civil Procedure 45(b)(1) states in relevant part that, "[i]f the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served, a notice **must** be served on each party."[5] (emphasis added). The 1991 amendment to Rule 45(b)(1) explains that "[t]he purpose of such notice is to afford other parties an opportunity to object to the production or inspection, or to serve a demand for additional documents or things." Fed. R. Civ. P. 45(b)(1) Advisory Committee Notes.

Courts have sanctioned parties who fail to comply with Rule 45(b)(1). *See Firefighter's Institute for Racial Equality ex rel. Anderson v. City of St. Louis*, 220 F.3d 898 (8th Cir. 2000) (improperly served nonparty subpoenas quashed); *Murphy v. Board of Education of the Rochester City School District*, 196 F.R.D. 220 (W.D.N.Y. 2000) (attorneys' fees awarded for repeated violations of Rule 45(b)(1)). Failure to comply with Rule 45(b)(1) does not, however, automatically result in the striking of documents obtained through a subject subpoena. Rather, where a party

---

[5] "A subpoena must issue ... for production or inspection, if separate from a subpoena commanding a person's attendance, from the court for the district where the production or inspection is to be made." Fed. R. Civ. P. 45(a)(2)(C).

has failed to comply with the notice requirements of Rule 45(b)(1), courts have declined to quash subpoenas or to exclude materials where the aggrieved party was not prejudiced by the delay. *See Mazloum v. Dist. of Columbia Metro. Police Dept.*, 530 F. Supp. 2d 282, 285–88 (D.D.C. 2008).

Petitioner's assertion that respondent somehow waived any objection to petitioner's use of documents obtained through the Overstock.com subpoena is not well-taken. Generally, the Board does not entertain motions in limine or otherwise exclude evidence prospectively. *See Greenhouse Systems Inc. v. Carson,* 37 USPQ2d 1748, 1750 (TTAB 1995); TBMP Section 527.01(f) (3d ed. rev. 2012). A party must wait until after the evidence at issue is introduced to file a motion to strike or otherwise object to such evidence. *See id.* Notwithstanding that respondent did not object to documents obtained through the Overstock.com subpoena until seven months after it received copies of those documents, respondent's objection to petitioner's use of documents obtained through the Overstock.com subpoena in its combined brief in opposition to petitioner's motion for summary judgment and in support of its cross-motion for summary judgment is timely.

Petitioner clearly violated Rule 45(b)(1) by failing to make prior service upon respondent of notice of the Overstock.com subpoena. Nonetheless, the Board finds that respondent was not prejudiced by the violation and that exclusion of documents produced pursuant to that subpoena is therefore unwarranted.

As noted *supra*, when notice regarding a subpoena is provided, "[t]he purpose of such notice is to afford other parties an opportunity to object to the production or inspection, or to serve a demand for additional documents or things." Fed. R. Civ. P. 45(b)(1) Advisory Committee Notes. As to the first of these two possible responses to the service of the subpoena, we note that a motion to quash a subpoena *duces tecum* may only be made by the party to whom the subpoena is directed, except where the party seeking to challenge the subpoena has a personal right or privilege with respect to the subject matter requested in the subpoena. *See In re Grand Jury Subpoena John Doe, No. 05GJ1318*, 584 F.3d 175, 184 n.14 (4th Cir. 2009); *Smith v. Midland Brake, Inc.*, 162 F.R.D. 683, 685 (D. Kan. 1995). *See also* Fed. R. Civ. P. 45(c)(3)(A)(iii) ("On timely motion, the issuing court must quash or modify a subpoena that ... requires disclosure of privileged or other protected matter, if no exception or waiver applies.").

Respondent has not alleged such a personal right or privilege and instead concedes that it did not have standing to object to the production of documents pursuant to the Overstock.com subpoena.

As to the second possible response to the service of the subpoena, respondent received copies of documents obtained through the Overstock.com subpoena nearly four months prior to the close of the discovery period.  With such documents in its possession, respondent could have sought its own subpoena of Overstock.com to obtain additional documents and/or a discovery deposition of a representative from Overstock.com, but did not so seek. Based on the foregoing, we decline to exclude documents produced pursuant to the Overstock.com subpoena based on the Rule 45(b)(1) violation.

**2. Admissibility of the evidence.**

The documents produced pursuant to the Overstock.com subpoena are supported by a declaration of Krysta Pecharich, paralegal in the Overstock.com legal department, who avers that her responsibilities include responding to subpoenas directed to Overstock.com which request production of documents; that, on February 2, 2012, she received the subpoena from petitioner directing her to gather and produce all customer inquiries regarding any

BODIPEDIC product including the terms TEMPUR, TEMPER, TEMPUR-PEDIC or TEMPURPEDIC; that, on February 10, 2012, she gathered and produced "the requested documents documents from an established customer inquiry database maintained by Overstock.com;" and that the produced documents are genuine and authentic copies of business records kept in the normal course of Overstock.com's business.

A review of such documents indicates that they are undated transcripts of live online chats and telephone conversations between Overstock.com representatives who are identified only by first names and customers who are mostly unnamed or not identified by their first and last names, upon which petitioner relies as evidence of actual confusion between the marks at issue. The statements in the documents are hearsay because neither the Overstock.com representatives nor the customers [declarants] are testifying in this proceeding, and the statements are offered to prove that the customers are confused because of the similarity of the marks. *See* Fed. R. Evid. 802.

Further, as pointed out by respondent, they are inadmissible under the records of a regularly conducted activity hearsay exception in Fed. R. Evid. 803(6). Although Ms. Pecharich avers that the requested documents

are gathered from Overstock.com's established customer inquiry database, she does not aver that making a record of transcripts of customer service online chats and telephone conversations is done in the course of a regularly conducted activity of its business and that making the transcripts at issue was a regular practice of that activity. *See* Fed. R. Evid. 803(6).

However, although not argued by the parties, the documents are admissible under Fed. R. Evid. 803(1) to the extent that they reflect the present-sense impressions of the customers [declarants]. *See Edom Laboratories Inc. v. Lichter*, 102 USPQ2d 1546, 1552 (TTAB 2012). In addition, statements of customer confusion in the trademark context fall under Fed. R. Evid. 803(3) "state of mind" exception to the hearsay rule.[6] *See Nat'l Rural Electric Cooperative Ass'n V. Suzlon Wind Energy Corp.*, 78 USPQ2d 1881, 1887 n.4 (TTAB 2006) (citing *CCBN.com Inc. v. c-call.com Inc.*, 53 USPQ2d 1132, 1137 (D. Mass. 1999)).

Accordingly, the documents obtained through the Overstock.com subpoena will be considered in this decision.

---

[6] To the extent that respondent objects to the Pecharich declaration because petitioner did not produce a copy of that declaration until it included such copy as an exhibit to the motion for summary judgment, we note that parties routinely submit evidence in connection with summary judgments through nonparty witness declarations that were not previously disclosed to their adversaries. *See* TBMP Section 528.05(b).

However, as noted *supra*, such documents are undated transcripts of live online chats and telephone conversations between Overstock.com representatives who are identified only by first names and customers who are mostly unnamed or incompletely identified. Accordingly, those documents are of little probative value in the absence of testimony from the customers themselves as to whether they were confused and, if so, what caused their confusion. *See Corporate Fitness Programs Inc. v. Weider Health and Fitness Inc.*, 2 USPQ2d 1682, 1690-1 (TTAB 1987) (testimony regarding alleged incidents of third-party confusion is of little probative value in the absence of testimony from the third parties themselves).

**THE PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT**

Turning to the cross-motions for summary judgment, a motion for summary judgment is an appropriate method of disposing of cases in which there are no genuine disputes as to any material facts, thus leaving the case to be resolved as a matter of law. *See* Fed. R. Civ. P. 56(c). In deciding motions for summary judgment, the Board may not resolve issues of material fact; it may only ascertain whether such disputes as to material facts exist. *See Lloyd's Food Products Inc. v. Eli's Inc.*, 987 F.2d 766, 25 USPQ2d 2027 (Fed. Cir. 1993); *Opryland USA Inc. v. Great*

*American Music Show Inc.,* 970 F.2d 847, 23 USPQ2d 1471 (Fed. Cir. 1992); *Olde Tyme Foods Inc. v. Roundy's Inc.,* 961 F.2d 200, 22 USPQ2d 1542 (Fed. Cir. 1992).

We note the parties' common use on identical and overlapping goods[7] of marks containing the –PEDIC formative and designs featuring reclining human shapes.  Nonetheless, even if we assume, as petitioner argues, that petitioner's mark is famous and that there has been some actual confusion between the marks at issue, we find that neither party has met its burden of establishing that there is no genuine dispute as to any material fact remaining for trial and that, therefore, neither party is entitled to entry of judgment as a matter of law.  At a minimum, genuine disputes of material fact exist as to the similarity or dissimilarity of the overall commercial impressions of the marks at issue, the extent of third-party use of similar marks on the same or related goods,[8] and the scope of

---

[7] The identifications of goods in the registrations at issue both include "pillows" and "mattresses" in International Class 20.  In determining whether or not there is a likelihood of confusion, we must presume that the scope of the goods encompasses all of the goods of the nature and type described, that they would travel in all channels of trade normal for those goods and to all classes of prospective purchasers for those goods.  *See Canadian Imperial Bank v. Wells Fargo Bank*, 811 F.2d 1490, 811 F.2d 1490, 1 USPQ2d 1783 (Fed. Cir. 1992); *Tea Board of India v. Republic of Tea Inc.,* 80 USPQ2d 1881, 1897 (TTAB 2006).

[8] Respondent has submitted copies of more than ninety registrations for marks which include –PEDIC and fifteen

protection to which petitioner's pleaded mark is entitled.[9]

In view thereof, petitioner's motion for summary judgment is denied,[10] and respondent's cross-motion for summary judgment is also denied.[11]

---

registrations for marks which include designs featuring reclining human shapes, all of which are for goods that overlap with those at issue herein. Such registrations have little probative value in any determination of the merits of petitioner's claim, because they are not evidence that the marks are in use on a commercial scale or that the public has become familiar with them. See *Palm Bay Imports Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689, 1693 (Fed. Cir. 2005) ("The probative value of third-party trademarks depends entirely upon their usage.") (citation omitted); *Han Beauty, Inc. v. Alberto-Culver Co.*, 236 F.3d 1333, 57 USPQ2d 1557, 1561 (Fed. Cir. 2001); *Productos Lacteos Tocumbo S.A. de C.V. v. Paleteria La Michoacana Inc.*, 98 USPQ2d 1921, 1934 (TTAB 2011). Nonetheless, they are sufficient to indicate that there is a genuine dispute as to the extent of third-party use of similar marks on the same or related goods and the scope of protection to which petitioner's pleaded mark is entitled. See *Lloyd's Food Products, Inc. v. Eli's Inc.*, 987 F.2d 766, 25 USPQ2d 2027 (Fed. Cir. 1993).

[9] The parties should not presume that these are the only issues remaining for trial.

[10] Although the rules provide that parties may file motions for summary judgment until the commencement of trial, in this case, the parties have already filed-cross motions for summary judgment. Because judicial economy will no longer be served, the Board will not hear any additional motions for summary judgment.

[11] The parties' evidence in connection with the motions for summary judgment is of record for consideration of these motions only and cannot be relied upon at trial unless it is properly made of record during the offering party's testimony period. *See* TBMP Section 528.05(a)(1). In the alternative, should the parties agree to pursue resolution of the merits of this dispute through some form of Accelerated Case Resolution (ACR), as noted *infra*, they can stipulate that some or all of the summary judgment evidence, as may be appropriate, will be considered of record for trial.

In deciding petitioner's Section 2(d) claim at final hearing, we note that either party may rely on the filing dates of the applications for the registrations at issue, but that, if neither party submits proof of its use prior to filing, priority belongs to the party with the earliest filing date. *See, e.g., Hilson Research Inc. v. Society for Human Resource Management,* 27 USPQ2d 1423, 1428-29 n.13 (TTAB 1993); *Brewski Beer Co. v. Brewski Brothers Inc.*, 47 USPQ2d 1281, 1283-84 (TTAB 1998). Moreover, we note that the identifications of goods in opposer's pleaded registration and applicant's involved application both include "pillows" and "mattresses." As noted *supra*, in determining whether or not there is a likelihood of confusion, we must presume that the scope of the goods encompasses all of the goods of the nature and type described, that they would travel in all channels of trade normal for those goods and to all classes of prospective purchasers for those goods. *See Canadian Imperial Bank v. Wells Fargo Bank, supra*. Thus, because the parties' goods are identical in part, the disposition of this case will likely turn on the similarity of the marks and the scope of protection to be accorded each of the involved marks.

Accordingly, this case may be appropriate for a decision on an accelerated case resolution (ACR) record.

The parties may wish to consider supplementing their cross-motions for summary judgment and providing the Board with a stipulation allowing the Board to decide disputed issues of fact in a final decision on the merits based on such record.  Information concerning use of ACR in Board proceedings is available online at

http://www.uspto.gov/trademarks/process/appeal/index.jsp.

The parties are allowed until thirty days from the mailing date set forth in this order to file a stipulation to have this proceeding decided by ACR, failing which proceedings will be resumed, commencing with petitioner's testimony period.

Proceedings herein otherwise remain suspended.